## Hoe and others *v.* Cottrell and another.

(*Circuit Court, D. Connecticut.* March 30, 1880.)

PATENT—PATENTEE SOLE INVENTOR—BURDEN OF PROOF.—In a suit for an alleged infringement of letters patent, the burden of proof is on the defendant to show that the patentee was not the sole inventor, although prior thereto foreign letters had been issued to such patentee and another for the same invention.

COMMISSIONER'S DECISION—FORMAL DEFECTS NOT REVIEWABLE COLLATERALLY.—In such suit the commissioner's decision is final that the drawings and the model required by the statute had been presented, that the attorney of the applicant was duly constituted by the applicant, and had authority to amend or alter the specification, and that the specification had been sufficiently sworn to by the inventor.

COMBINATION—VALID CLAIM.—A claim is not invalid upon the ground that the several elementary parts of a combination have no conjoint action, and no active connection to produce a joint result, where there was invention in the combination, and the patentee was the first inventor.

SAME—INVENTION.—In determining whether there was invention in any particular combination, the important point is to ascertain whether novelty and utility existed

OMISSION OF CLAIM IN STATEMENT OF INVENTION.—A patent is not void by reason of the omission of a claim in the statement of the invention in the body of the specification, which had been introduced by way of amendment into the claim, where the combination recited in the claim is shown in the drawings and described in the specification.

*M. B. Phillips* and *Benjamin F. Thurston,* for plaintiffs.

*H. D. Donnelly* and *William A. Shipman,* for defendants.

SHIPMAN, J. This is a bill in equity, based upon the alleged infringement of letters patent, which were granted on March 16, 1869, to Richard M. Hoe, as the assignee of Auguste Hippolyte Marinoni, for an improvement in lithographic printing presses. The patent has been assigned to the plaintiffs.

The first question is whether Marinoni was the sole inventor of the alleged improvement, or was a joint inventor with Francis Noel Chandre. In 1866 Mr. Hoe was in France, and purchased from Marinoni all his right to the invention in consequence of the future grant of letters patent therefor in the United States. Marinoni made oath, in his application to

this government for the letters patent, that he believed himself to be the original and first inventor of the improvements, and that they had been patented in France on June 5, 1865, in the name of Marinoni and Chandre.

Chandre, who was a partner of Marinoni at the date of the invention, testified that he was a joint and equal inventor of the improvement which he describes at length. On June 12, 1865, a Belgian patent was issued to Marinoni and Chandre, and an English patent was issued to one Clark, upon their communication. By the French statute every new discovery or invention, in all departments of industry, confers upon its author, under the conditions and for the time mentioned in the statute, the exclusive right of working for his own profit the said invention: "Every person who shall wish to obtain a patent of invention must deposit, under a sealed cover, * *  * * * * (1) his petition to the minister of agriculture and commerce; (2) a specification of the discovery, invention or application forming the subject of the petition; (3) the drawings," etc. The patents demanded in due form are delivered without previous examination. Applications are not required to be verified by oath, and are not preserved by the government.

The plaintiffs introduced Marinoni's deposition, in which he asserted that he was the sole inventor. It is necessary for the defendants to overcome the *prima facie* case, and to establish affirmatively that the applicant was not the sole inventor. The testimony of Chandre is not sufficient. I cannot perceive from the depositions that one story is apparently more entitled to confidence than the other. Marinoni's statement is exceedingly brief, and is a bare assertion that he was the inventor. Chandre is equally positive of his joint participation in the invention, and he describes its character, but is equally silent as to the manner in which they worked, and as to the method by which they jointly accomplished the result. If the defendants could have shown an admission by Marinoni, in either foreign application, that he was not the sole inventor, it would have turned the scale, but it is not cer-

tain what the application was, or that he personally made an application.

The French system of issuing patents is not so exact as that which prevails here. While the existence of the foreign patents, confessedly with the knowledge of Marinoni, throws doubt upon his title, and while I am not satisfied as to the authorship, it is impossible to say that the defendants have established, by a preponderance of proof, the fact that Marinoni was not the sole inventor.

It is next insisted that the patent is invalid by reason of sundry irregularities and omissions during and prior to the transit of the application through the patent office. These alleged irregularities are as follows: Marinoni appointed Messrs. "Munn, Wales and Beach" to act as his attorneys in presenting the application, and in making "all such alterations and amendments as may be required, and also to sign his name to the drawings." This authority was never revoked by Marinoni or by Hoe. Hoe & Co., who had no record interest in the invention, revoked the power to Munn & Co., and appointed C. A. Durgin to represent them in the premises. The specification which Marinoni had made and filed was not intelligible. Durgin amended· the specification by writing substantially a new one, which was not sworn to by the inventor. It is claimed that there were no original drawings or model accompanying the description, as required by the statute, because the description was unintelligible and was not a description.

All these alleged irregularities and omissions relate to the formal acts to be done by the inventor, or by his duly constituted attorney, preparatory to and connected with the issuing of the patent. The commissioner's decision upon the fact that the acts were done, and upon the fact of the compliance of the applicant with the requirements of the statute in regard to his application, is not to be reviewed collaterally. For the purposes of this case the commissioner's decision is final, that the drawings and the model required by the statute had been presented; that Durgin was the duly constituted attorney of the applicant or his assignee, and had

authority to amend or alter the specification; and that the specification had been sufficiently sworn to by the inventor. If the patent is invalid by reason of any or all of these defects its invalidity is to be determined in a proceeding to set aside the patent by *scire facias*, or by bill, or information. *Seymour* v. *Osborne*, 11 Wall. 7, 96; *Jackson* v. *Lawton*, 10 John. 23.

The defendants insist in the third place that, in view of the state of the art, there was an entire lack of invention in the combination which is the subject-matter of the third and only claim which is said to have been infringed, or that the combination was old. The improved press was for lithographic printing. The invention recited in the third claim was for the combination of a sheet flier with an impression cylinder without tapes, and a receiving cylinder provided with grippers and tapes, substantially as described and specified. The object of the invention was to have the whole width or surface of a sheet of paper printed with heavy color on the impression cylinder, and to be delivered automatically, without smutting, face side uppermost on the fly board or table. The whole width of the paper is enabled to be printed, because the impression cylinder is without tapes underlying the sheet. The sheet is taken by the grippers of the receiving cylinder and is delivered upon tapes running from the receiving cylinder over pulleys near the roots of the fly fingers. These tapes are above the fly fingers, and thus prevent the sheet from being smutted in consequence of sliding down the smooth fly frame. When the sheet is in proper position it is automatically turned by the fly frame, face side uppermost, upon the table.

If there was invention in this combination, and the patentee was the first inventor, the claim is not invalid upon the ground that the sheet flyer and impression cylinder have no conjoint action, and no active connection to produce a joint result. The combination is of the class mentioned in *Forbush* v. *Cook*, 2 Fisher, 668, in which case Judge Curtis says: "To make a valid claim for a combination it is not necessary that the several *elementary parts* of the combination should

act simultaneously. If those elementary parts are so arranged that the successive action of each contributes to produce some one practical result, which result, when attained, is the product of the simultaneous or successive action of all the elementary parts, viewed as an entire whole, a valid claim for thus combining these elementary parts can be made." The result which was attained was the automatic delivery of a sheet, automatically printed upon its broadside with heavy color, without smutting, face side uppermost. This result was the product of the successive action of all the elementary parts.

It is not denied that all the elements were old. Delivery mechanism, consisting of tapes combined with flyers, had been used in presses having printing cylinders with tapes, impression cylinders without tapes, and receiving cylinders with tapes had been combined with sheet flyers without tapes, but the combination of all the elements in one existing machine was new. It is substantially admitted that this combination had not been actually made or described in any machine, although it is claimed that the combination was so far suggested in antecedent patents that the flyer could have been added by any skilled press builder as a matter of course.

Prior to the date of the invention *sheet* flyers were a common adjunct of a press. They were made so as to be detached from presses, and to be put on or taken off at pleasure. Tape and sheet flyer deliveries had been combined, and, therefore, when Dutartre, in his French patent of January 11, 1853, showed an impression cylinder without tapes, a receiving cylinder with grippers and tapes, and a tape delivery, it is said that any skilled builder could have mechanically added a sheet flyer to the tapes.

It is further said that when the Reynolds American patent of February 27, 1863, contained the same combination, and, after showing how the paper was delivered to the tapes, added, it is "piled by hand or by an ordinary fly," it was the part of ordinary mechanical labor to add the fly to the tapes. It is to be observed that Reynolds did not suggest the combination of fly and tapes. The same point is put by the

defendants more forcibly in this way: The plaintiffs, at the date of the invention, were making in their factory the Hoe high stop press, which had an impression cylinder without tapes, a receiving cylinder with tapes, and a sheet flyer without tapes. They also knew of the Taylor press, and were making at the same time divers presses like the Taylor, having impression cylinders with tapes, and a combined tape and sheet flyer delivery. What was easier than for Mr. Hoe to discard his ingenious sheet flyer, and substitute the well-known Taylor method of delivery? Looking at the question from the present stand-point of time, it is very difficult to point out satisfactorily to one's self the changes which required invention. If he looked merely at the simplicity of the combination, and at the ease with which it now seems that anybody could have accomplished the result, the conclusion would be irresistible that there was no combination.

The facts which are also to be taken into account in the determination of this question are these: At the date of the invention about 1,800 patents upon printing presses had been granted in England, France, and the United States. This combination did not exist in any patented or non-patented device, so far as is now known. Lithographic printing was at the time well understood. Mr. Hoe, who had long been a printing press manufacturer and inventor, and was thoroughly conversant both by study and practice with the subject of improvements in printing, and was making both the Hoe high stop press and presses which had tape and fly deliveries, when he saw the Marinoni press recognized it as an invention embodying an advance in the art, and hastened to purchase the exclusive right to use the improvement in this country. The combination is useful. It has been a successful and popular press, and has been extensively sold. The plaintiffs have substituted it for the Hoe high stop press. The exhaustive and expensive manner in which this suit has been carried on and contested shows that the combination is of value.

In the determination of the question whether there was invention in any particular combination, the important point

is to ascertain whether novelty and utility existed. It is true that these requisites may result from mere mechanical skill, and a new and useful combination may be formed by the mere mechanical addition of an old member to an old set of members. But when a device has a new mode of operation, which accomplishes beneficial results, "courts look with favor upon it," and are not exacting as to the degree of inventive skill which was required to produce the new result. There must be some, but a little will suffice. *Furbresh* v. *Cook*, 2 Fisher, 668; *Middletown Tool Company* v. *Judd*, 3 Fisher, 144; *Stimpson* v. *Woodman*, 10 Wall. 117.

The facts that in the multiplicity of printing press mechanism this combination had not been hit upon, and that when it was introduced its utility was universally recognized, and that it is plain that in order to make the combination some changes were necessary in any machine or drawing which has been shown, satisfy me that to produce this result required changes which the mere skill of the skilled mechanic would not suggest, and that the work was practically more difficult than now seems to the theorist to have been necessary.

The defendants next insist that the patent is void because the patentee, in the body of his specification, states that his invention consisted in the combination with the receiving cylinder, provided with grippers and cords or tapes, of the sheet flyers; whereas, a new element is introduced into the claim, viz.: "an impression cylinder without tapes."

This claim was introduced into the claim by amendment after the application had been rejected, and the corresponding amendment was not made in the statement of the invention in the body of the specification. It is admitted by the defendants' expert to be true, "that the combination recited in the third claim is all shown in the drawings and is described in the specification, as to its principles of construction and mode of operation, but it is equally true that it is nowhere described, except in the claim, as one of the parts of invention of the patentee." It would not be in accordance with the principles of construction which have heretofore been

adopted by the courts of this country to declare the patent void on account of this discrepancy or omission.

In regard to infringement, differences in the construction of the two machines exist, but they are not material with respect to the mode of operation of the combination which is the subject of the third claim.

Let there be a decree for an injunction, and an accounting in respect to the third claim.