## HARTSHORN *v.* EAGLE SHADE ROLLER Co. and others.

*(Circuit Court, D. Massachusetts.   October 11, 1883.)*

1. PATENTS FOR INVENTIONS — INVENTOR'S OATH ON APPLICATION FOR PATENT
OR REISSUE.
    Objection being taken by the defendants that the oath of the plaintiff to his
    application for a reissue is irregular and insufficient, in stating that the orig-
    inal letters patent are not "fully operative" instead of "inoperative," *held*, that
    the words "inoperative or invalid," in the statute authorizing reissues, mean
    inoperative or invalid in whole or in part, and that consequently the words
    "not fully inoperative" conform to the true intent of the law, if the law re-
    quired an oath, which it does not.   The statutory requirement of an affidavit
    by an applicant for an original patent is directory merely; and, if it is irreg-
    ular or omitted altogether, the patent is not thereby vitiated.   In the matter of
    reissues there is no law requiring the applicant to take any oath on the subject
    of the invalidity of his original patent.

2. SAME — LACHES.
    Reissue No. 2,756, dated August 27, 1867, of letters patent No. 44,624, dated
    October 11, 1864, *held* void on account of failure to make application to amend
    within the required time.   But such failure and long delay in the reissue of
    October 31, 1876, of original letters patent No. 69,176, dated September 24, 1867,
    *held* not void, on the ground that the circumstances of the delay in this case
    were such that it could not be accounted laches on the part of the plaintiff, and
    was one from which no innocent person could have suffered.

In Equity.

*S. D. Law* and *B. F. Thurston*, for complainants.

*C. Smith* and *W. A. Herrick*, for defendant.

Before LOWELL and NELSON, JJ.

LOWELL, J.   The plaintiff owns two reissued patents; one as in-
ventor, and one as assignee from the inventor, of improvements in
shades for window curtains.   No. 2,756, which is called the Harts-
horn reissue, is dated August 27, 1867; the original was No. 44,624,
dated October 11, 1864.   The second, called the Campbell reissue,
was granted October 31, 1876; the original to William Campbell,
No. 69,176, is dated September 24, 1867.

The Hartshorn reissue has been before the courts in the first and
second circuits, and its validity does not appear to have been dis-
puted.   It was construed and upheld, and infringements were sup-
pressed.   *Hartshorn* v. *Tripp*, 7 Blatchf. 120; *Hartshorn* v. *Almy*, 1
Holmes, 493.   The Campbell reissue is proved to have been sus-
tained in the second circuit, in motions for injunction.   Neverthe-
less, the recent decisions of the supreme court will require us to
examine the validity of the reissues.

A preliminary objection is taken to both reissues that the oath of
the inventor to his application for the reissue is irregular and in-
sufficient.   It is, in each case, that the original letters patent are not
"fully operative," whereas the defendant insists that it should be that
they are "inoperative," simply—that is, wholly inoperative.

The statute authorizing reissues uses the words "inoperative or
invalid," but that means inoperative or invalid in whole or in part.
We have never seen a case of reissue in which the original patent

was totally inoperative. The oath, therefore, conforms to the true intent of the law. The defendant refers us to *Whitely* v. *Swayne*, 4 Fisher, 107, in which Judge LEAVITT decided that the oath to an application for a reissue should conform to the exact words of the law. The learned circuit judge of the same circuit has lately adopted that decision without examining the point anew. *Poage* v. *McGowan*, 15 FED. REP. 398.

The attention of Judge LEAVITT does not appear to have been called to the decisions which hold that the statutory requirement of an affidavit by an applicant for an original patent is directory merely; and, if it is irregular or omitted altogether, the patent is not thereby vitiated. This law accords with all analogies in similar matters, and with sound reason. It would be most unjust that a mere slip in the form of an affidavit, to which attention ought to have been called in the patent-office, should destroy an honest patent. The decisions upon this point, beginning in 1813, are: *Whittemore* v. *Cutter*, 1 Gall. 429; *Dyer* v. *Rich*, 1 Metc. 180; *Crompton* v. *Belknap Mills*, 3 Fisher, 536; *Hoe* v. *Cottrell*, 17 Blatchf. 546; [S. C. 1 FED. REP. 597;] and see Curtis, Pat. §§ 274, 274*a*. The point was taken in *Hoe* v. *Bost. Daily Adv. Corp.* 14 FED. REP. 914, but was considered to be fully settled, and is not noticed in the judgment. It was taken before Judge BLATCHFORD in *Hoe* v. *Kahler*, 12 FED. REP. 111, but the facts did not fairly raise the question. These are all the decisions which we have found as to original patents, and they are all on one side; and they agree with a class of cases in which it is held that a patent once issued cannot be collaterally impeached. *Rubber Co.* v. *Goodyear*, 9 Wall. 788; citing *Jackson* v. *Lawton*, 10 Johns. 23, and other cases.

With respect to reissues, the argument is stronger, because there is no law which requires the applicant for a reissue to take any oath at all on the subject of the invalidity of his original patent. Rev. St. § 4916. This consideration would, of itself, be decisive. *Gold & Stock Tel. Co.* v. *Wiley*, 17 FED. REP. 234. This objection is overruled.

The validity of the Hartshorn reissue was not attacked in the cases first above referred to, for the reason, probably, that it is clearly warranted by the law as then understood. It is for the same invention as the first patent, in which there is a paragraph which might stand well enough for the very claim of the reissue. For a careful description of the invention, we refer to *Hartshorn* v. *Tripp* and *Hartshorn* v. *Almy*, *ubi supra*. Briefly stated, it is an improvement in shade fixtures, by which a roller, with the usual spiral spring for raising the shade, is stopped at any point of its ascent or descent, by merely checking the speed of the roller. The stop is effected by means of a pawl engaging with a ratchet, the position and shape of the pawl being such that it will slip by the ratchet when the speed of raising or lowering the shade is considerable, and will engage when

it is slight. In the original patent, the pawl is claimed as attached to the bracket or other fixture near the roller. This is an unnecessary limitation of the invention described in the patent, because the pawl may be as well attached to a fixed part of the roller. The reissue discards this limitation. The application to amend was made more than two years after the date of the patent, and we have to decide whether such an expansion can be made after such a lapse of time in the absence of any explanation of the delay. It is pointed out by counsel that in all the late cases in the supreme court in which *laches* alone vitiated the reissue the delay was very much greater than in this case. But the emphatic and reiterated declaration in the judgment in *Miller* v. *Brass Co.* 104 U. S. 350, that a delay of more time than would be reasonably sufficient to read the patent and ascertain its need of amendment, should be accounted *laches* in a case where enlargement of the claim is the only amendment, cannot be overlooked. We must hold this reissue void.

The first claim of the Campbell reissue is, "in a spring shade roller, having a pawl or detent and a ratchet, or their equivalent, so arranged as to allow the shade to be drawn down or run up without obstruction, and which engage automatically with each other to hold the shade in any desired position, the arrangement of such pawl, or detent, on the roller which carries the notched spindle or ratchet, so that when the roller is removed from its brackets, the tension of the spring will be preserved." This reissue was taken about 10 years after the original patent, but under very peculiar circumstances. Messrs. Munn & Co., patent solicitors, had, in 1867, charge of two applications for improvements in shade rollers,—one invented by Hartshorn, and one by Campbell. Hartshorn's application was a little the earlier of the two. Either description might properly sustain a claim for the broad invention of a roller which would maintain its locked position when removed from the brackets, as now claimed in the reissue of Campbell. This broad claim was inserted in the Hartshorn patent, No. 68,502, and no interference was declared between Hartshorn and Campbell; but the claim of the latter was limited. It was discovered in 1874, by testimony given in a cause in this court, that Campbell could carry back his invention some months beyond Hartshorn, and thereupon Hartshorn bought the Campbell patent, and both were surrendered and were amended in such a way that the broad claim was dropped from the Hartshorn patent, and taken up by the Campbell patent. In all this there is no evidence of fraud or laches, but the contrary. The defendants argue that if we look at the Campbell patent alone, he would seem to have neglected for 10 years to enlarge his claim. This is true; but the public were not injured, for the same claim was found in the patent of Hartshorn. The invention was not thrown open to the public,—was not abandoned. Campbell, misunderstanding perhaps his rights, or the true state of things, acquiesced through the solicitors, who

were common to both parties, in the broad claim of Hartshorn. When the mistake was discovered, it was corrected by a simple exchange of claims. We are of opinion that, under these unusual circumstances, the lateness of the application is explained and shown to have been brought about by an actual mistake, without fraud, and to have been one from which no innocent person could have suffered.

This broad claim is infringed by the defendant's apparatus. His pawls, or detents, differ somewhat from those described in the patent, but not materially, as far as the first claim is concerned.

Decree for complainant on the Campbell reissue.