HALL (BARRETT v.). See Case No. 1,047.

---

## Case No. 5,926.

### HALL v. BIRD.

[6 Blatchf. 438; 3 Fish. Pat. Cas. 595; Merw. Pat. Inv. 667.] [1]

Circuit Court, S. D. New York. June 4, 1869.

PATENTS—PATENTABILITY WHERE PRIOR MACHINE HAD EXISTED, BUT WAS ABANDONED.

1. The object to be attained by the use of the machine described in letters patent granted to Charles Hall. August 30th, 1864, for an "improved machine for stretching chains," explained.

2. Where it is shown that a prior machine was constructed and used, and did not bodily disappear from view, but its existence and use were not made public, and the knowledge and use of it did not exist in a manner accessible to the public, and it had been substantially abandoned, and had substantially passed away from the memory of those who used it, until recalled to their memory by the success of a like machine, which was subsequently invented by another, the invention embodied in the latter machine cannot be regarded as having been previously known or used, within the meaning of the 6th section of the act of July 4, 1836 (5 Stat. 119).

[Cited in Wilson v. Coon. 6 Fed. 627; Davis v. Brown, 9 Fed. 656; Electric Accumulator Co. v. Julien Electric Co., 38 Fed. 128.]

3. The first claim of the Hall patent claims the use of tongs or clamps which have a provision for grasping firmly the link or links to be stretched in the chain, without injuring other links; and any prior machine, to be an answer to such first claim, must be shown to have contained tongs or clamps having such provision.

4. The plaintiff being entitled to recover, but not having proved any specific amount of damages, six cents damages were awarded to him.

This was an action on the case [against James Bird] for the infringement of letters patent [No. 43,987] granted to the plaintiff [Charles Hall], August 30th, 1864, for an "improved machine for stretching chains." It was tried before the court, without a jury.

Charles M. Keller, for plaintiff.

Robert D. Holmes and James F. Malcolm, for defendant.

BLATCHFORD, District Judge. The specification of the plaintiff's patent says: "This invention relates to a new and useful device for stretching chains, those which are designed for working over pulleys, whereby the links are all brought to an uniform length. so that they will all engage with the teeth on the pulleys, or fit properly or snugly

[1] [Reported by Hon. Samuel Blatchford. District Judge; reprinted in 3 Fish. Pat. Cas. 595; and here republished by permission. Merw. Pat. Inv. 677, contains only a partial report.]

in recesses made therein. The great difficulty of driving machinery or shafting by means of pulleys and chains, has hitherto been owing to the variation in the links, some being shorter than others, so that many would not engage with the teeth of the pulleys, or fit properly in recesses made in the peripheries of the pulleys to receive them." The improved machine is described as follows: A framing is made, composed of two uprights, at some distance from each other, attached to a suitable base, and connected, near their upper ends, by a horizontal bar. To one side of this bar there is attached a gauge, composed of a bar having a groove made longitudinally in its upper surface, and curved notches at each side of the upper part of such groove, the notches being all of the same size, and at equal distances apart, corresponding precisely to the alternate links of an uniform and perfect kind. The ends of the handles of a pair of tongs are connected by links to a ring fitted on a hook in one of the uprights. The ends of the handles of a similar pair of tongs are connected by links to a ring which has a chain secured to it. The jaws of the two pairs of tongs have grooves made in their ends to receive the horizontal links of the chain to be stretched, the portions of the jaws at each side of the grooves grasping the upright links. By this means, the tongs are enabled to grasp firmly the chain to be stretched. The chain before spoken of as secured to the ring last mentioned, is fitted on a hook on the end of a swivel on a screw which passes horizontally through a nut attached to the other upright, the screw having a crank on its outer end. A portion of the chain to be stretched which has links of different sizes or lengths is fitted between the tongs, the chain on the hook is put in place. the screw is turned, and the portion of the chain between the tongs stretches, the pull or tension causing the tongs to grasp the chain firmly. Any portion of the chain. from one to any number of links, may be thus stretched, where necessary. The gauge is used for testing the chain after being stretched, in order to insure correctness and uniformity in the links. the groove receiving the vertical links and the notches the horizontal ones. By this arrangement chains may be stretched so that their links will be of uniform length to work perfectly over pulleys. The claims are: (1st) The employment or use of the two pairs of tongs, or other suitable clamps, in connection with the screw, or its equivalent, arranged substantially as and for the purpose specified; (2d) the chain, or its equivalent, in connection with the swivel, for conveniently connecting one of the two pairs of tongs. to the screw, as set forth; (3d) the gauge, when used in combination with the two pairs of tongs and the screw, or its equivalent, for the purpose specified.

This suit was commenced on the 24th of December, 1866. The notice of special matter of defence sets forth, that, at the time of the commencement of the suit, and for four years prior thereto, the defendant was using, for the purpose of stretching chains for pulley blocks, the same machine which the plaintiff claims to be an infringement on his patent, and that, for a period of eighteen years prior to August, 1862, the same machine, or one of the like kind that the defendant is using, was used for the purpose of stretching chains for pulley blocks by the deceased father of the defendant.

It is apparent, from the specification, that the plaintiff's machine is designed to stretch the links of a chain, so as to make all the links of the chain of a uniform length, that they may fit snugly in the recesses in pulleys. It is not designed to stretch the entire chain indiscriminately, or any given portion of it, without reference to the length of any particular link before or after such stretching, but it is designed to stretch each particular link which is, before such stretching, shorter than a prescribed length, while it is so arranged that no link shall be stretched which is not shorter than such prescribed length. This necessity requires, (1st,) that the two points where the chain is to be grasped for stretching it, shall not be always at a fixed distance apart, but shall be capable of being varied in their distance apart, so as, if required, to stretch a single short link that may be found interposed between two links of the proper length; (2d,) that the jaws of the tongs shall be so constructed, by being grooved or otherwise, as to grasp firmly any particular link, without injuring it or any other link. The great utility of the invention is beyond question. The evidence shows. that it is impossible practically to make, by hand, the links of a uniform length, and that. if made thus uniform by hand, they will stretch in use, and stretch unequally, so as to produce difficulty in using the chain on a pulley with uniform recesses, and that the only feasible method of making a chain for use on such a pulley is to make the links shorter than the required length, and then take out the stretch of the metal by stretching each separate link to the proper gauged measure, by a machine like the plaintiff's.

It is in evidence that the defendant's father, in 1852, procured to be constructed in New York, a machine for stretching chains,. which had two pairs of tongs that grasped the chain, so that, by applying power, by means of a crank at one end, the chain was stretched. This machine he placed in a cellar, where he used it, keeping it concealed, however, from persons in general. The door of the cellar was kept locked, and, so far as appears, the existence of the machine was. known only to the machinist who put it up, to the defendant's father, to the defendant's. brother, and to the defendant himself. The defendant states, in his testimony, that the machine was locked up to keep people from seeing it; that his father always locked the

door of the basement or cellar where it was, when he came out; that the machine was kept secret; that it was not used very often, perhaps not once in a month, or six months, or a year; that finally he took from off the machine a pair of boxes, which he wished to use for another purpose; and that the machine thereafter remained in the cellar unused until it was removed from there by him, his father having died in 1862. It also appears, that the machine was removed from this cellar into the defendant's shop in July, 1865; that, when taken out, it was in a rusty condition; that, prior to its being so taken out, the defendant, in making chains which required the links to be of equal lengths, stretched the links by hand, by means of a hammer and an anvil, and not by any machine; that, during 1864, the plaintiff's machine was described to the defendant by a workman who was at the time in his employ, and who had previously been in the plaintiff's employ and used his machine; and that thereafter the rusty machine was exhumed from the cellar, and cleaned and fitted up in the defendant's shop, and used to stretch the links of chains. It does not satisfactorily appear that, during the time that the machine in the cellar was used by the defendant's father, he made any chains which required the links to be stretched to a uniform length, or that he used the machine to stretch the links of chains to a uniform length.

On the foregoing facts, I think that this case fairly falls within the case of Gayler v. Wilder, 10 How. [51 U. S.] 477, even assuming that the old machine, in the condition in which it was while in the cellar, was substantially identical in construction with the machine as used by the defendant after July. 1865, and with the plaintiff's machine. In the case of Gayler v. Wilder [supra], one Conner had constructed, for his own private use, a safe substantially like the one patented to Fitzgerald, some time before Fitzgerald invented his safe, and had used it as a safe, for more than six years, in the counting-room of a type foundry. Its existence and use were known to the persons who worked in the foundry, although its particular internal construction, which was the point of the invention, does not appear to have been known to them. It then passed into other hands, but what became of it did not appear. Conner made but one such safe, and, after that one passed out of his hands, he used other safes, of a different construction. At the trial, before Mr. Justice Nelson, the court charged the jury, that if Conner had not made his discovery public, but had used the safe simply for his own private purpose, and it had been finally forgotten or abandoned, such a discovery and use was not an obstacle to the taking out of a patent subsequently, by another person, for a safe of like construction, if he was an original, though not the first, inventor of such a safe. The jury having found in favor of the patent, the case was

carried to the supreme court, by writ of error, and that court held, Chief Justice Taney delivering its opinion, that the prior knowledge and use spoken of in the 6th section of the patent act of July 4, 1836 (5 Stat. 119), as necessary to invalidate a patent, must be a "knowledge and use existing in a manner accessible to the public." The chief justice says: "If the Conner safe had passed away from the memory of Conner himself, and of those who had seen it, and the safe itself had disappeared, the knowledge of the improvement was as completely lost as if it had never been discovered. The public could derive no benefit from it, until it was discovered by another inventor. And if Fitzgerald made his discovery by his own efforts, without any knowledge of Conner's, he invented an improvement which was then new, and, at that time, unknown; and it was not the less new and unknown because Conner's safe was recalled to his memory by the success of Fitzgerald's." The court affirmed the correctness of the instruction to the jury above mentioned. Now, although the old machine, in the present case, was constructed in 1852, and had been kept in the cellar of the defendant's father, under the circumstances stated, and had been occasionally used there, and although it had not bodily disappeared from view, yet its existence and use were not made public, the knowledge and use of it did not exist in a manner accessible to the public, it had been substantially abandoned, and it had substantially passed away from the memory of those who used it, as is shown by the fact that, when they were called on to stretch the links of chains to a uniform length—a purpose to which it is not shown that the defendant's father ever applied the machine—it did not occur to them to use the machine for the purpose, until after they had learned of the existence and use of the plaintiff's machine. The knowledge of the machine was, therefore, as effectually lost as if it had never been constructed, and the public could derive no benefit from the invention embodied in it, until such invention should be discovered by another inventor. As it clearly appears that the plaintiff made his invention by his own efforts, without any knowledge of the machine in the cellar of the defendant's father, he invented an improvement which was then new, and was at the time unknown; and it was not the less new and unknown because the old machine was recalled to the memory of the defendant and of his brother, and of the machinist who put it up, by the success of the plaintiff's machine.

But, independently of this view, the defendant has failed to establish satisfactorily the identity of the old machine with the machine as used by him after its removal from the cellar, in an important particular. The specification of the plaintiff's patent states that the jaws of his tongs have grooves made in their ends to receive the horizontal links

of the chain, the portions of the jaws at each side of the grooves grasping the upright links, and that, by this means, the tongs are enabled to grasp the chain firmly. In the use of the machine, this provision of the grooves is shown to be important, not merely to grasp firmly the link that is being grasped, but to avoid injuring it, or any other link. A like provision, by equivalent means, is found in the jaws of the tongs in the machine as used by the defendant since July, 1865; but such provision, so far as appears, was wholly wanting in the old machine, as it was while in the cellar. The proper construction of the first claim of the plaintiff's patent is, that it claims the use of the tongs, or other suitable clamps, embodying such a provision as is described in the plaintiff's specification, and as is found in the machine of the defendant, and as is not shown to have existed in the latter machine before July, 1865, for grasping the proper link firmly, without injury to it, or to any other link, in connection with the screw, or its equivalent, arranged substantially as and for the purpose specified.

· On the evidence, the plaintiff is entitled to recover. The machine used by the defendant infringes the first claim of the plaintiff's patent. But, as the plaintiff has failed to prove any specific amount of damages, the finding will be for only six cents damages.