GOTHAM SILK HOSIERY CO., Inc., v. ART-
CRAFT SILK HOSIERY MILLS, Inc.

Nos. 890, 910.

District Court, D. Delaware.

Oct. 28, 1932.

Hugh M. Morris, of Wilmington, Del., and Samuel E. Darby, Jr., Edward W. Vaill, and A. I. Spiro, all of New York City, for plaintiff.

Caleb S. Layton, of Wilmington, Del., Clifton V. Edwards and Morris W. Pool, both of New York City, and Leon Edelson, of Philadelphia, Pa., for defendant.

NIELDS, District Judge.

These patent suits were brought by Gotham Silk Hosiery Company, Inc., against Artcraft Silk Hosiery Mills, Inc. They were tried together. In one, plaintiff charges defendant with infringement of Tilles patent, No. 1,824,636, for "Hosiery." In the other, plaintiff charges defendant with infringement of Buchsbaum patent, No. 1,728,924, for "Stocking." The defense to the Tilles patent is invalidity by reason of (a) lack of patentable novelty, (b) anticipation, and (c) prior use by defendant. The defenses to the Buchsbaum patent are invalidity and noninfringement.

Plaintiff is a manufacturer of full-fashioned silk hosiery known by the trade-name "Gold Stripe," "Gotham Gold Stripe," and "Adjustables." The "Adjustables" are manufactured and sold under the patents in suit. Defendant likewise is a manufacturer of full-

fashioned silk hosiery. Its manufacture and sale of a stocking known under the trade-name "Tri-length" is the infringement complained of.

Full-fashioned silk stockings for women have been manufactured for many years. Manufacturers were under the necessity of making stockings of different foot sizes. In each foot size stockings were made for the short-legged woman as well as the long-legged woman, the thin-legged woman as well as the fat-legged woman. When fashion decreed many shades of color for stockings, the number of stockings in foot size and length was multiplied by the number of colors demanded. A store handling women's stockings was stocked with stockings meeting the requirements of leg length and color for all foot sizes. Correspondingly the manufacturer was required to manufacture stockings of various lengths per foot size for each color. The length of stockings varied from 23 inches to 32 inches. To keep the good will of their dealers, manufacturers maintained the policy of exchanging old for fresh merchandise. Due to change in style and deterioration of material, stockings returned were either a total loss or had to be disposed of as "seconds." Stockings of various sizes, various lengths, and various colors presented a problem to the manufacturer. This problem grew to such proportions that the United States Bureau of Standards was induced by the industry to make a survey and study of the situation in an effort to standardize the average stocking length. Tilles, vice president and general manager of plaintiff, solved the problem. His conception was the manufacture of a single pair of stockings of maximum length in a particular foot size that was adjustable to both the long-legged and short-legged woman of that foot size. He proposed to manufacture a stocking nearly half a foot longer than the standard proposed by the government. In other words, he proposed to manufacture a stocking 32 inches instead of 27½ inches long. He proposed to fabricate the stocking with a welt of reinforced material. The welt was provided with a number of rows of special stitches so spaced as to permit the flat folding of the stocking. The stocking when folded had a picot edge, was not bulky or unsightly in appearance, and in fact was neither bulky nor uncomfortable.

The object of the Tilles invention, as stated in the specification, is to provide a full-fashioned stocking having in the welt a series of transverse lines of perforations formed in the process of knitting by cross-looping or the lateral transfer of the loops by a spe-

cial action of the knitting machine. These perforations enable the wearer of the stocking to fold the stocking over on such cross stitches or perforations so that the length of the stocking may be made to accommodate different lengths of legs of the wearers.

■ The granting of the Tilles patent is prima facie evidence of its validity. Lehnbeuter v. Holthaus, 105 U. S. 94, 96, 26 L. Ed. 939. This presumption of validity is made stronger when, as here, the best prior art invoked by the defendant was cited and disregarded in the Patent Office. Moreover, commercial success is evidence of novelty to be considered along with the other evidence. Where there is doubt as to invention or novelty, commercial success is sufficient to turn the scales. Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 495, 23 L. Ed. 952.

Tested by the foregoing principles, I find the Tilles patent valid.

The Costello patent is relied upon by the defendant as the closest approximation to the disclosure of the Tilles patent. While Costello discloses the use of lock stitches to stop runs, she does not disclose or suggest the utilization of the lock stitch for the purpose of "foldability therealong" and meet the demand for a stocking adjustable as to leg length. Plaintiff's "Adjustables" were enthusiastically received by the purchasing public. The first advertisement of the stocking appeared on May 8, 1931. Sales rapidly increased from 586 pairs in April, 1931, to 355,282 pairs in December of the same year. The plaintiff as manufacturer was enabled to reduce its inventory loss from $126,942.08 in 1930 to $18,248.27 in 1931. March 30, 1931, plaintiff had in its special service department 137 different styles "counting each size and each leg length as a separate item." On March 25, 1932, the same department had only 24 styles.

The defense of prior use by the defendant has not been proved beyond that reasonable doubt which the law requires. Indeed, the authentic nature of the evidence produced in support of this defense is subject to grave suspicion. "The frequency with which testimony is tortured, or fabricated outright, to build up the defense of a prior use of the thing patented, goes far to justify the popular impression that the inventor may be treated as the lawful prey of the infringer." The Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 447, 36 L. Ed. 154.

The defendant paid the Tilles patent the tribute of extremely close, if not absolute, imitation. This is not seriously controverted in the testimony or argument of the case. Defendant's "Tri-length" stocking clearly infringes the Tilles patent.

■ Little need be said as to the Buchsbaum patent. Adjustment under that patent was confined to the severance of sections from the open end of the stocking. The claims of this patent call for a "readily removable thread" or corresponding "means" to effect the severance. Defendant's stocking is not intended to be severed. It is not sold as a severable stocking. It has no "readily removable thread" within the meaning of the Buchsbaum patent. No evidence was offered by the plaintiff to show that any one had ever separated any of defendant's stockings after the manner of the claims of the Buchsbaum patent. Moreover, defendant never advertised its stockings as severable or made any representations to that effect. Assuming the Buchsbaum patent valid, it is not infringed by the defendant.

A decree in accordance with this opinion may be submitted.