**ARTCRAFT SILK HOSIERY MILLS, Inc., v. GOTHAM SILK HOSIERY CO., Inc.**

**GOTHAM SILK HOSIERY CO., Inc., v. ARTCRAFT SILK HOSIERY MILLS, Inc.**

**Nos. 5073, 5089.**

Circuit Court of Appeals, Third Circuit.
June 12, 1934.

Rehearing Denied July 20, 1934.

Clifton V. Edwards, of New York City, Thomas G. Haight, of Jersey City, N. J., and Leon Edelson, of Philadelphia, Pa., for Artcraft Silk Hosiery Mills.

Hugh M. Morris, of Wilmington, Del. (Hugh M. Morris, of Wilmington, Del., and Samuel E. Darby, Jr., Edward W. Vaill, and Abraham I. Spiro, all of New York City, of counsel), for Gotham Silk Hosiery Co.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below, Gotham Silk Hosiery Company, Inc., hereafter called "Gotham," the owner of patent No. 1,824,636, granted September 22, 1931, to Roy E. Tilles for "Hosiery," filed a bill charging the Artcraft Silk Hosiery Mills, Inc., hereafter called "Artcraft," with infringement thereof. In the same court, Gotham, the owner of patent No. 1,728,924, granted September 24, 1929, to Morris Buchsbaum for "Stockings," filed a second bill against Artcraft, charging infringement of this latter patent. Both bills were heard together. After final hearing, the court filed an opinion holding the Tilles patent valid and infringed and the Buchsbaum patent not infringed. From the decree, in so far as it held the Buchsbaum patent not infringed, Gotham appealed, and, from the decree so far as it held Tilles' patent valid and infringed, Artcraft appealed. We dispose of both appeals in this opinion.

As we agree with the court below ([D. C.] 1 F. Supp. 643), we avoid needless repetition by extracting from its comprehensive opinion, statement and conclusions as follows:

"Plaintiff is a manufacturer of full-fashioned silk hosiery known by the trade-name 'Gold Stripe,' 'Gotham Gold Stripe,' and 'Adjustables.' The 'Adjustables' are manufactured and sold under the patents in suit. Defendant likewise is a manufacturer of full-fashioned silk hosiery. Its manufacture and sale of a stocking known under the trade-name 'Tri-length' is the infringement complained of.

"Full-fashioned silk stockings for women have been manufactured for many years.

Manufacturers were under the necessity of making stockings of different foot sizes. In each foot size stockings were made for the short-legged woman as well as the long-legged woman, the thin-legged woman as well as the fat-legged woman. When fashion decreed many shades of color for stockings, the number of stockings in foot size and length was multiplied by the number of colors demanded. A store handling women's stockings was stocked with stockings meeting the requirements of leg length and color for all foot sizes. Correspondingly the manufacturer was required to manufacture stockings of various lengths per foot size for each color. The length of stocking varied from 23 inches to 32 inches. To keep the good will of their dealers, manufacturers maintained the policy of exchanging old for fresh merchandise. Due to change in style and deterioration of material, stockings returned were either a total loss or had to be disposed of as 'seconds.' Stockings of various sizes, various lengths, and various colors presented a problem to the manufacturer. This problem grew to such proportions that the United States Bureau of Standards was induced by the industry to make a survey and study of the situation in an effort to standardize the average stocking length. Tilles, vice president and general manager of plaintiff, solved the problem. His conception was the manufacture of a single pair of stockings of maximum length in a particular foot size that was adjustable to both the long-legged and short-legged woman of that foot size. He proposed to manufacture a stocking nearly half a foot longer than the standard proposed by the Government. In other words, he proposed to manufacture a stocking 32 inches instead of 27½ inches long. He proposed to fabricate the stocking with a welt of reinforced material. The welt was provided with a number of rows of special stitches so spaced as to permit the flat folding of the stocking. The stocking when folded had a picot edge, was not bulky or unsightly in appearance, and in fact was neither bulky nor uncomfortable.

"The object of the Tilles invention, as stated in the specification, is to provide a full-fashioned stocking having in the welt a series of transverse lines of perforations formed in the process of knitting by cross-looping or the lateral transfer of the loops by a special action of the knitting machine. These perforations enable the wearer of the stocking to fold the stocking over on such cross stitches or perforations so that the length of the stocking may be made to accommodate different lengths of legs of the wearers.

"The granting of the Tilles patent is prima facie evidence of its validity. Lehnbeuter v. Holthaus, 105 U. S. 94, 96, 26 L. Ed. 939. This presumption of validity is made stronger when, as here, the best prior art invoked by the defendant was cited and disregarded in the Patent Office. Moreover, commercial success is evidence of novelty to be considered along with the other evidence. Where there is doubt as to invention or novelty, commercial success is sufficient to turn the scales. Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 495, 23 L. Ed. 952.

"Tested by the foregoing principles, I find the Tilles patent valid."

As we view the Tilles patent, its object and effect was to make a stocking of one length adapt itself to different leg lengths and thus do away, as the proofs show it did, with the prior noneconomic practice of making different stockings for different leg lengths. There is no novelty in itself in folding over the top of a stocking, nor was there any novelty in so knitting a cross stocking section as stopped the downward run of a broken thread at that point, such, for instance, as was shown in patent No. 976,555 of Costello, which expired four years before Tilles applied for his patent in 1931. The Costello patent was used by Artcraft for years, and never suggested to it its use as a means of making a stocking of one length usable for different leg lengths. What Costello did was a form of lock stitch which prevented thread breaks higher than the Costello lock stitch from running below such lock stitch. Were the Costello lock stitch patent in force to-day, it would bar Tilles from using it, but it by no means follows that, because Gotham used this meritorious Costello lock stitch after its expiration, Costello anticipated Tilles' invention, by which he made a stocking of one length adapt itself to both long and short leg lengths. The simple fact is that Costello in her lock stitch patent never disclosed or used Tilles' combination. During the seventeen years of the Costello patent and the four years following its expiration, the art, until Tilles made his disclosure, continued its wasteful process of making for long length legs one length of stocking and a different length for short leg length. That the Tilles stocking was novel and useful is shown by its rapid and wide sales. In April, 1931, 586 pairs of Tilles stockings; in December following, 355,282 pairs. The plaintiff company was able to reduce its 1930

inventory loss of $126,942.08 to $18,248.27 in 1931, and its 137 different styles of stockings in March, 1931, to 24 styles in March, 1932. It will thus be seen the Tilles patent is valid and Artcraft's infringement is shown. In regard to the Buchsbaum patent, we adopt the reasoning and conclusions of the trial judge as follows: "Little need be said as to the Buchsbaum patent. Adjustment under that patent was confined to the severance of sections from the open end of the stocking. The claims of this patent call for a 'readily removable thread' or corresponding 'means' to effect the severance. Defendant's stocking is not intended to be severed. It is not sold as a severable stocking. It has no 'readily removable thread' within the meaning of the Buchsbaum patent. No evidence was offered by the plaintiff to show that any one had ever separated any of defendant's stockings after the manner of the claims of the Buchsbaum patent. Moreover, defendant never advertised its stockings as severable or made any representations to that effect. Assuming the Buchsbaum patent valid, it is not infringed by the defendant."

It follows, therefore, that, after full consideration of all questions raised, the appeals in both cases are dismissed, the costs of said appeals in this court to be divided equally between the parties, and the decrees entered below are affirmed.