## GOTHAM. SILK HOSIERY CO., Inc., v. ARTCRAFT SILK HOSIERY MILLS, Inc.

### No. 910.

District Court, D. Delaware.

May 22, 1940.

Samuel E. Darby, Jr. (of Darby & Darby), and Abraham I. Spiro, both of New York City, and Hugh M. Morris, of Wilmington, Del., for plaintiff.

Sylvan Hirsch (of Sundheim, Folz & Hirsch), of Philadelphia, Pa., Clifton V. Edwards (of Edwards, Bower & Pool), of New York City, Leon Edelson, of Philadelphia, Pa., and Richards, Layton & Finger, of Wilmington, Del., for defendant.

NIELDS, District Judge.

Exceptions to report of special master.

In Gotham Silk Hosiery Company, Inc. v. Artcraft Silk Hosiery Mills, Inc., D.C., 1 F.Supp. 643, this court held Tilles U. S. Patent No. 1,824,636 for "Hosiery" valid and infringed. The decision of this court was affirmed, 3 Cir., 72 F.2d 47. Thereafter this cause was referred to a special master "to take and state an account of the profits, gains and advantages which the defendant has derived, received or made since September 22, 1931, by reason of its infringement of [said patent] and any and all damages which the plaintiff has sustained by reason of said infringement by said defendant".

The Revised Statutes of the United States provide: "The several courts vested with jurisdiction of cases arising under the patent laws shall have power to grant injunctions according to the course and principles of courts of equity, to prevent the violation of any right secured by patent, on such terms as the court may deem reasonable; and upon a decree being rendered in any such case for an infringement the complainant shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby, and the court shall assess the same or cause the same to be assessed under its direction. If on the proofs it shall appear that the complainant has suffered damage from the infringement or that the defendant has realized profits therefrom to which the complainant is justly entitled, but that such damages or profits are not susceptible of calculation and determination with reasonable certainty, the court may, on evidence tending to estab-

lish the same, in its discretion, receive opinion or expert testimony, which is hereby declared to be competent and admissible, subject to the general rules of evidence applicable to this character of testimony; and upon such evidence and all other evidence in the record the court may adjudge and decree the payment by the defendant to the complainant of a reasonable sum as profits or general damages for the infringement." R.S. § 4921, as amended, 35 U.S.C.A. § 70.

■ "A reasonable sum as profits or general damages for the infringement" are the critical words of the Statute. They apply to the case at bar. There is no evidence of profit here,—no evidence of difference between cost of manufacture and receipts from sales. The master's statement of a so called "advantage" is introducing a new basis of recovery not justified by the statute. The large award for the infringement of a patent of this character based upon an alleged advantage is unjustified.

The Tilles patent dealt with utilization of the lockstitch for the purpose of "foldability therealong" to meet the demand for a stocking adjustable to leg length. "Full-fashioned silk stockings for women have been manufactured for many years. Manufacturers were under the necessity of making stockings of different foot sizes. In each foot size stockings were made for the shortlegged woman as well as the longlegged woman, the thinlegged woman as well as the fatlegged woman. When fashion decreed many shades of color for stockings, the number of stockings in foot size and length was multiplied by the number of colors demanded. A store handling women's stockings was stocked with stockings meeting the requirements of leg length and color for all foot sizes. Correspondingly the manufacturer was required to manufacture stockings of various lengths per foot size for each color. The length of stockings varied from 23 inches to 32 inches. To keep the good will of their dealers, manufacturers maintained the policy of exchanging old for fresh merchandise. Due to change in style and deterioration of material, stockings returned were either a total loss or had to be disposed of as 'seconds'. Stockings of various sizes, various lengths, and various colors presented a problem to the manufacturer. This problem grew to such proportions that the United States Bureau of Standards was induced by the industry to make a survey and study of the situation in an effort to standardize the average stocking length."

During the hearing before the special master the plaintiff waived all damages. Under the heading "damages" the special master found: "At the conclusion of its case in chief plaintiff waived damages and put in no evidence regarding them. Defendant, over plaintiff's objection, offered evidence of damages on the theory that if no profits were found to be recoverable against it, damages could be awarded upon the basis of this testimony. In the circumstances there is no necessity for the consideration of defendant's testimony as to damages."

In his report the master sets out the basis for profits which he adopted. Nowhere does he find that defendant received so many dollars from the sale of the patented stockings, nor that it cost the defendant so much money to manufacture and sell the patented stockings; nothing upon which one may base the difference between the cost of manufacture and the cash received by defendant. Defendant refused to furnish books covering cost of manufacture and sale of the patented stockings. Whereupon plaintiff was forced to take the testimony of Arthur F. Morton, a person experienced in the manufacture of hosiery in the Philadelphia area.

With respect to the Morton testimony the master said: "My conclusions render it unnecessary to consider any phase of the Morton testimony, so that there is no necessity for dealing with defendant's objections regarding it."

In his report the master made the following findings:

"It is well recognized in the cases that a patent accounting case is similar to other equitable accountings, and that all that equity seeks to accomplish is substantial justice. Tilghman v. Proctor, 125 U.S. 136, 138, 8 S.Ct. 894, 31 L.Ed. 664. Equally well settled is the proposition that the issue involved in such a proceeding is the special advantage or gain which resulted to the infringer through use of the patented product. As was said by the Supreme Court—

" 'In settling an accounting between a patentee and an infringer of the patent,

the question is: not what profits the latter has made in his business, or from his manner of conducting it, but what advantage has he derived from his use of the patented invention?' Illinois Cent. Railroad Co. v. Turrill, 94 U.S. 695, 696, 24 L.Ed. 238."

Both of these cases dealt with process patents. In the first, the patent was for a process of making soap. Defendant had saved by the use of the process in its manufacture. The second case dealt with a process in manufacturing car wheels. It had saved by the use of the process.

The master further states in his report: "Thus our inquiry leads us to the consideration of this particular question, and not to the general question of the amount of actual profit derived by the defendant upon the sale of infringing stockings as ascertained by the difference between selling price and cost of the infringing article itself. A fortiori, the inquiry is not concerned with the question whether during the accounting period or any part of it defendant made profits or sustained losses in its business in general."

The master further states: "Our inquiry therefore leads to the question of what special advantages defendant derived from the use of this plaintiff's patent and this inquiry must be approached, as the Supreme Court said in Tilghman v. Proctor, supra, as other equitable problems are approached, with a view of accomplishing substantial justice between parties."

The master then states the basis of his findings: "In this case the record furnishes, I think, evidence of the specific advantage which defendant derived from the use of the patent. This is found in the defendant's price lists and circulars which have been admitted. While it is true that the price lists do not furnish an exact standard upon which my conclusion may be based, I nevertheless believe that they fairly exhibit a policy upon the de-fendant's part to regard the infringing stocking as having a sales value of $1.00 per dozen more than its equivalent noninfringing stocking."

The master follows with this proposition: "I have accepted the difference of One Dollar per dozen as furnishing from the record a fair measure of defendant's profit derived from the use of plaintiff's patent. I think that the record as a whole upon this phase of the case is fairly susceptible of authorizing this conclusion."

Finally the master found: "I therefore conclude that the $1.00 difference in price represents a fair measure of defendant's profit recoverable by plaintiff. From this sum there should be deducted the additional cost involved in the manufacture of the infringing welt."

The master determined a profit without determining the cost of manufacture and the receipts from sales. Not determining the cost of manufacture nor the price received, it is impossible to determine the profit. Assuming a differential of one dollar between the patented and unpatented stocking, it is a misnomer and mistake to say that one dollar is the profit. Profit is "the difference between cost and sales". Providence Rubber Company v. Goodyear, 9 Wall. 788, 19 L.Ed. 566.

There is no evidence of profit,—no evidence of the difference between cost of manufacture and receipts from sales. The master's statement of a socalled advantage is in effect introducing a new basis of recovery not justified by the statute. The statute authorizes either profits or damages. The award for infringement of a patent of this character based upon an alleged advantage is wholly unjustified.

The case is remitted to the special master for the determination of the profit, if any, received by defendant from its infringement of the Tilles patent.