**OSTBY & BARTON CO. v. JUNGERSEN.**

No. 1438.

District Court, D. New Jersey.

May 7, 1946.

Milton, McNulty & Augelli and John L. Milton, Jr., all of Jersey City, N. J. (Fish, Richardson & Neave, John Vaughan Groner and John B. Cunningham, all of New York City, and Edwards & Angell, of Providence, R. I., and Edward Winsor, of Providence, R. I., of counsel), for plaintiff.

George D. Richards, of Newark, N. J., (Cooper, Kerr & Dunham, Drury W. Cooper, and John N. Cooper, Jr., all of New York City, and Karl W. Flocks, of Washington, D. C., of counsel), for defendant.

654

MEANEY, District Judge.

This is an action for a declaratory judgment instituted under section 274d of the Judicial Code, 28 U.S.C.A. § 400 and under the patent laws, and plaintiff seeks a declaration of invalidity and non-infringement of Jungersen Patent No. 2,118,468.

Defendant, Jungersen, the owner of the patent in suit, by counterclaim alleges infringement by plaintiff, Ostby & Barton, of the said patent and seeks an injunction and an accounting for infringement of claims 5 and 6 of his patent.

The original controversy between the parties was founded upon an accusation by the defendant that plaintiff infringed the patent, and the complaint seeks a declaration of invalidity of the entire patent. In view of these circumstances, the issues to be considered will involve the entire patent and will not be confined to a determination of validity of claims 5 and 6 of the patent alone. The issue of validity having been raised initially, the court is of the opinion that the validity of the entire patent becomes a question of general importance and should be considered and determined.

At the initial stages of this case American Associates, Inc., moved to be added as a party plaintiff and on a showing of its acquisition of all of the assets of the plaintiff corporation the motion is granted.

The patent in suit relates to a method of casting articles of intricate design and a product thereof and is concerned primarily with casting articles of jewelry, rings, and the like, of intricate detail, frequently designed with hollows, undercut portions and perforations. The patent has six claims, the first five of which are for a process and the sixth for a resultant article of jewelry.

Claims one to four of the Jungersen process are concerned with a method of casting articles of jewelry of intricate design. They involve the making of a model which may contain undercut surfaces, hollows or perforations. The model is placed on a base and a primary mould of rubber is built around it with the top surface forming a parting line. The mould is then vulcanized and forms a permanent shape.

The model is then removed and a suitable quantity of molten wax or other low temperature fusing material is cast under applied force by rotating in a centrifugal casting machine, the centrifugal action thus forcing the wax into the mould and displacing the air, thereby filling the finest cavities completely.

The two sections of the primary mould are then separated. The flexible rubber mould permits the wax pattern to be withdrawn without injury to undercut surfaces or delicate parts. The wax pattern is then invested in a material such as plaster of Paris forming a secondary mould. The nature of the investment material is such that it closely surrounds the surface of the wax pattern and after removal of the pattern from the hardened mould, the cavity remaining is a practically perfect reproduction of the wax pattern and the original model.

After investment, the plaster mould is subjected to sufficient heat to melt the wax without in any way affecting the cavity thereby produced. The molten precious metal is then cast centrifugally in the secondary or plaster mould and finally the mould is separated from the final casting. The resultant product is an exact replica of the original model, requiring only that the sprue be removed and the piece polished.

Claims five and six of the patent are for a method of casting and a resultant article thereby obtained. Claim five involves a method of casting an article of jewelry or a part thereof of intricate design having one or more small projections or depressions, "comprising first producing" a model of the article to be cast, then forming about said model a primary mould, then removing the model from the primary mould, then introducing into the mould by force sufficient to deposit the material into the depression or depressions of the primary mould, molten wax or other material of low fusing point that will not injure the primary mould, to form a pattern and employing the pattern so made for the manufacture of a casting mould.

Prior to the Jungersen patent disclosure, the only known and generally practiced processes in the jewelry casting art were the "Cuttle fish" and "sand" casting

methods. Neither method was efficient and admittedly each was inferior to the method disclosed in the patent in suit. Under these prior methods the castings were without detail and required extensive hand tooling and chasing by a master artisan, thus greatly increasing the cost of the completed article. The Jungersen method reduces to a minimum the necessary hand finishing of the cast article and makes possible the reproduction in any desired number of exact replicas of the original model.

The plaintiff, seeking a declaration of invalidity of the entire patent, contends that the Jungersen Patent is fully anticipated in prior patent and prior publication disclosures (in non-analogous casting arts) as well as by several asserted methods allegedly in public use in both analogous and non-analogous arts.

It is evident from a review of prior patents and publications in the sculptural and industrial casting arts that reproductions of original models or patterns by casting method is of ancient practice. Thus, Cellini in the 16th century taught the use of a multi-part mould and the "lost wax" process. Similarly, the making of a primary mould about the original model of a flexible mould forming material or in sectional parts is revealed in patents to Spencer, No. 748,996, Haseltine (Br. 2467), and Kralund 1,238,789. The same steps are taught in publications of Cellini and in the translation of La Gravure, and are employed in the Slatis-Dee ring casting method as described by Slatis, and in the Austenal method for dental casting. The same prior disclosures and patents teach the "lost wax" process.

Prior patents to McManus, No. 1,457,040 and Perry No. 1,121,659 describes the use of centrifugal force in casting molten metal for the final reproduction. Use of centrifugal force is also revealed in publications on die casting methods and its use is· asserted in the Slatis-Dee and Austenal methods.

It is evident that many of the steps employed in the Jungersen patent are old and were known in other casting arts. But the utilization of centrifugal force to introduce the molten wax into the primary mould is a new step in any art. The use of centrifugal force to cast the primary pattern is not only new, but it is a vital component to the success of the Jungersen method.

It is important to note that in none of the non-analogous sculptural and industrial arts was a high degree of exactness required in reproducing intricate design to the finest detail, and a reading of the prior art would not of itself be sufficient to enable one skilled in the art to perform the requisites of the jewelers trade.

It was not until Jungersen added the additional step of casting the wax pattern in the primary mould by the use of centrifugal force, that jewelry casting became a practically and commercially successful art.

Since the additional step used in the Jungersen patent is new, it represents an advance over any prior art and is a distinct advance in the jewelry art. Since the patent is found to be novel, the question remains whether it is patentably so. In determining validity, the question at issue is not whether the method proposed is better or more efficient; the requisite of patentability is the exhibition or manifestation of imaginative inventiveness sufficient to raise the alleged invention from the hand maiden state of improvement to the higher status of inspired discovery and application.

The fact that the Jungersen patent is in part a combination of old elements, to which a new element has been added, is not ground upon which to deny validity. However, to find the patent valid, the additional step must involve more than the exercise of mere mechanical skill. Thus, in Textile Machine Works v. Louis Hirsch Textile Machines, 302 U.S. 490, 497, 58 S.Ct. 291, 294, 82 L.Ed. 382, the Supreme Court stated: "The addition of a new and useful element to an old combination may be patentable; but the addition must be the result of invention rather than the mere exercise of the skill of the calling, and not one plainly indicated by the prior art." See also Electric Cable Joint Co. v. Edison Co., 292 U.S. 69, 79, 54 S.Ct. 586, 78 L.Ed. 1131; McIvor v. Chemurgic Corporation, 9 Cir., 104 F.2d 58.

In the present case, the prior knowledge was in the field of non-analogous casting arts. The end results required in those arts were dissimilar to those in the jewelry art. To arrive at a satisfactory result, both the means employed and the results obtained by Jungersen, were novel. The combination of partly new and partly old elements is patentable where the product obtained and the method used therefor are novel and the development thereof implied the exercise of inventive imagination beyond the skill of the trade. Tumbler v. Baltimore Paint & Color Works, Inc., D. C., 11 F.Supp. 183.

Insofar as claims 1 to 4 are concerned, in the view of the Court, the Jungersen patent discloses that "flash of creative genius" sufficient to provide the basis of patentability, and it is no argument for invalidity to assert that the use of centrifugal force is the mere substitution of equivalents which do substantially the same thing.

Thus, while the common knowledge and skill of the art is determinative of the sufficiency of anticipatory references, if the fictitious person of the patent law, the person possessed of the common knowledge and skill of the art, is unable to practice the purported invention by resort to the cited references and without resort to the patent in suit, the cited references are insufficient to negative novelty. See De Cew v. Union Bag & Paper Corporation, D.C., 57 F.Supp. 388, 397.

In contending for invalidity, plaintiff has relied extensively not only upon prior patents and publications, but upon the two asserted prior uses of Slatis and Austenal. Insofar as the Austenal use is concerned, extensive comment need not be made. The Austenal use or method was for dental casting. Its degree of success is questionable, but in any event, it adds little to the teachings of the prior patents and publications and did not employ centrifugal force in casting the wax pattern.

The asserted prior use by Slatis, however, requires further comment. The method or use, as described by Slatis, was for jewelry casting and primarily for the casting of rings. The Slatis method undoubtedly involved, with slight modification, all of the steps disclosed in the Jungersen patent, including casting of the wax pattern centrifugally on a "home made" machine. But whether or not the Slatis method anticipates the Jungersen patent need not be passed upon, nor need this Court concern itself with the nature of the proofs adduced, for it is evident that the Slatis method was never in prior "public use" and that Slatis was not a "first inventor".

Insofar as he was able, Slatis kept his method a secret. He did exhibit finished rings and disclosed that they were made by a casting process, but he "never disclosed" his method or taught his process to anyone. On examination Slatis stated: "Of course I never told anybody it is made by such a process * * * I kept my process a secret."

While employed with the Dee Company to conduct experiments, Slatis testified that he worked in a private room to which no one had access, that he kept his things in his own safe to which no one had the combination. On leaving the Dee Company, Slatis stated that "I took the secrets with me". On several occasions Slatis stated that his method was never put on a commercial basis. He testified several times that he had kept his process secret, that he never taught his process to anyone and products of his method never went on the market. Thus it is evident that Slatis kept his method concealed, disclosing only the result of his process to a limited number of persons.

Such use obviously is not a "public" one and such an inventor is not a first inventor. The doctrine is now well settled that one who had earlier conceived the same invention could defeat a later patent only if he had in some way made public his results. The compelling reason for such a conclusion seems to be that what does not in fact enrich the art, should not avail. Gillman v. Stern, 2 Cir., 114 F.2d 28, 31; Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651. The mere showing that someone had earlier conceived the same invention, but concealed and kept secret its use, will not suffice to anticipate a patent for the same device

thereafter discovered. Hall v. Bird, 11 Fed. Cas. page 211, No. 5,926; Gayler v. Wilder, 10 How. 477, 51 U.S. 477, 13 L.Ed. 504.

It is my opinion that claims 1 to 4 inclusive of Jungersen Patent No. 2,118,468 are valid. This finding of validity and patentability is further buttressed by two U. S. District Court decisions in which this same patent was found valid. Jungersen v. Jenkins et al., D.C., 30 F.Supp. 615; Jungersen v. Morris Kaysen Co., D.C., 31 F.Supp. 703. These prior adjudications, while not binding upon this court, are entitled to great weight. Standard Brands v. National Grain Yeast Corp., 3 Cir., 101 F.2d 814, 816. In addition to the above, patentability is further supported in the grant of patents by the United States and British patent offices. Many of the patents relied upon by the plaintiff were before the patent examiner.

Any remaining doubts that might linger as to novelty and validity would be resolved in favor of the defendant in view of the evident commercial success of the Jungersen process of which there is ample indication. Artcraft Silk Hosiery Mills v. Gotham, 3 Cir., 72 F.2d 47.

While claims 1 to 4 inclusive are found to be valid, it is my conclusion that claims 5 and 6, in the light of the prior art, and more particularly in view of Kralund patent No. 1,238,789, are anticipated and invalid.

Defendants, contending for novelty and validity, assert that claims 5 and 6 clearly and specifically claim the use of an applied force in depositing molten wax into the primary mold, thus in effect seeking to establish that step as a novel element in the claimed process, or else, by implication, they ask the Court to read the use of centrifugal force into the specifications of claims 5 and 6. The former contention must fail since the application of "force sufficient to deposit the material" as specified in claim 5 is similarly taught by the prior patent to Kralund.

In his specifications Kralund instructs the making of the primary pattern by "forcing molten material having a low fus-ing point into a metal mould or die under sufficient pressure to insure the filling of said mold or die". Kralund thereafter invests the pattern in a mass of plastic material and generally follows the steps known to the art.

Neither may the use of "centrifugal force" to deposit the material be read into and made a part of the specifications of claims 5 and 6. Claims of a patent are independent inventions and each constitutes a separate grant of monopoly. Each claim must be considered by itself both with respect to validity and infringement. One may be valid and the rest invalid. Wire Tie Machine Co. v. Pacific Box Corporation, 9 Cir., 102 F.2d 543; Sanitary Dist. of Chicago v. Activated Sludges, Inc., 7 Cir., 90 F.2d 727, certiorari denied 302 U.S. 736, 58 S.Ct. 121, 82 L.Ed. 569.

Neither may defendants construe claims 5 and 6 narrowly in order to preserve validity and broadly to secure a finding of infringement. De Cew v. Union Bag & Paper Co., supra. It has been stated that a claim which is capable both of broad and narrow construction in the light of the specification will be given that construction which sustains the patent. But where, from the specification or history of the application or language of the claim, it is clear that the patent office intended to grant the broader monopoly which turns out to be invalid, the courts will not for the arbitrary purpose of saving the claim read into it a limitation which it does not have. Aluminum Co. of America v. Thompson Products, Inc., 6 Cir., 122 F.2d 796.

It is noteworthy that while many of the patents cited by the plaintiff in contending for invalidity, appeared in the file wrapper before the patent office and before the Courts in prior adjudications (supra), the Kralund patent is inserted as an alleged anticipating patent for the first time in the present action.

In view of Kralund, it would appear that claims 5 and 6 amount to little more than an adaptation of an old process to a new use, clearly indicated by the prior

art, and do not amount to invention. General Electric Co. v. Jewel Incandescent Lamp Co., D.C., 47 F.Supp. 818.

Thus, while it is the Court's view that the utilization of centrifugal force to introduce molten wax into the primary mould as described in claims 1 to 4 inclusive, is patentable invention, the mere specification of "force sufficient" as set forth in claims 5 and 6 fails to achieve that distinction in the face of the plain indications of the prior art.

In view of these conclusions, only brief comment need be made on the charges of infringement. At the outset of this action, counsel for the defendant stated that the question of infringement involved only claims 5 and 6. No contention has at any time been made that plaintiff's process infringes upon claims 1 to 4 inclusive.

The issue of infringement being confined to claims 5 and 6 only, the Court's finding of invalidity of those claims necessarily results in a conclusion that plaintiff, Ostby & Barton, does not infringe upon the Jungersen patent. This conclusion likewise makes unnecessary any finding by the Court into the charges of inequitable conduct directed against the other by both parties to this suit.

Through the consideration of the validity or non-validity of the various claims involved in the instant case, there has predominated the idea that patentability is a vexatious question, not determinable by an unyielding standard of easy application. Theories concerning it have varied through successive decades, at times easy acceptance of tenuous claims being succeeded by rigid requirements, which tended to discourage research and experimentation.

The yard sticks applied by various courts, differed in their inventiveness almost as completely as did the inventions that were submitted for appraisal.

With all courts assuming that invention implies the production of novelty through the exercise of imagination, and controlled by the announcement of the Supreme Court that there must exist "a flash of creative genius, not merely the skill of the calling", the task of practical application of these principles is never an easy one.

Whether or not a flash of creative genius is revealed in any specific situation, depends on a number of factors, the sum total of which must serve to convince the court of the existence of the phenomenon of creative novelty.

In its construction of these principles, the court has arrived at its stated conclusions.

An order may be entered in accordance with the views above expressed.