ELECTRIC VEHICLE CO. et al. v. WINTON MOTOR–CARRIAGE CO. et al.

(Circuit Court, S. D. New York. November 9, 1900.)

1. PATENTS—VALIDITY—DETERMINATION ON DEMURRER.

A patent cannot be held invalid on demurrer unless its invalidity so clearly appears on its face that no evidence can change the legal aspect of the case, and entitle the complainant to recover.

2. SAME—GAS-MOTOR ROAD VEHICLES.

The Selden patent, No. 549,160, for a road vehicle propelled by a liquid hydrocarbon gas engine of the compression type, the application for which was made in 1879, is not so clearly lacking in invention, in view of the then state of the art, that it can be held void on its face.

In Equity. Suit for infringement of patent. On demurrer to bill.

Frederic H. Betts and William A. Redding, for complainants.

A. S. Pattison, for defendants.

COXE, District Judge. The bill, in the usual form, is based upon letters patent, No. 549,160, granted November 5, 1895, to George B. Selden for a road vehicle, the motor being a liquid hydrocarbon gas engine of the compression type. The application was filed May 8, 1879. The demurrer, though divided under five separate heads, is based upon the broad proposition that the patent, on its face, is void for lack of patentability. Stated generally the argument for the defendants is as follows: The specification concedes that all of the elements of the combinations of the claims were old; that steam engines were employed to propel road wagons, liquid fuel being used to generate steam; that gas engines were old and their use, as well as that of other motors, had been proposed for tram cars and similar vehicles. This being the admitted state of the art it is argued that it did not require an exercise of the inventive faculty to substitute a gas engine for a steam engine in a well-known self-propelling vehicle. It is insisted, further, that the claims do not cover combinations, but are for aggregations merely.

The law is very plain. A patent must not be held invalid upon demurrer unless its invalidity so clearly appears that no testimony can change the legal aspect of the case. If doubt exists the complainant is entitled to its benefit; if the faults pointed out by the defendant may, by any chance, be cured by proof; if, in short, there be a possibility that the complainant may succeed, the demurrer should be overruled. American Fibre Chamois Co. v. Buckskin Fibre Co., 18 C. C. A. 662, 72 Fed. 508. It should be remembered that the invention, if there be one, was made very early in the history of "horseless carriages." The court will take judicial notice that prior to May, 1879, the art of propelling vehicles by motors, carried by the vehicle itself, was in its infancy. These carriages were unknown to the streets of New York and few were seen on the streets of Paris. They were, without exception, crude and tentative machines. Selden must, therefore, have been among the earliest experimenters in the art. If the thousands of steam and electric "automobiles" which now are constantly perambulating the streets of every large city had been available as models the task of constructing a successful "gasmobile"

would have been less difficult. In other words, the fact that Selden's work was done over 21 years ago should not be lost sight of in estimating the value of his achievement. Upon the present record he must be regarded as the first to construct a road locomotive provided with a liquid hydrocarbon gas engine of the compression type so arranged as to leave the platform of the carriage unobstructed.

The drawings of the English patents referred to show locomotives designed to run upon rails and, therefore, presumably, upon levels or light grades. This was not the problem which was solved by Selden. He has made, or it must, on demurrer, be assumed that he has made, a self-propelling vehicle which is capable of traveling on ordinary country roads, going up and down hill, and making long distances without replenishing its fuel receptacle. Surely, it required invention to construct such a machine. But in order to test the proposition still further let it be assumed that steam carriages and electric carriages similar to those in common use to-day were known prior to 1879 and that gas moters had actually been used to propel, upon common roads, the heavy and clumsy structures shown in the drawings of the English patents.

This statement of the prior art assumes three most pregnant facts not found in the record, but, even so, how stands the case? Is it fair to assert that, in no circumstances, could it involve invention to create the patented machine, because similar machines had been propelled by electricity and steam, and machines, differing radically in structure and purpose, had been propelled by gas? Was there nothing more than the new application of an old device to a well-known class of vehicles? It is thought that the complainants are entitled to a more liberal interpretation of the patent than that contended for by the defendants. The patentee's contribution to the art should not be considered from a narrow point of view; his work should not be examined through an inverted telescope; the horizon of invention should not be contracted to the periphery of a sixpence. The patent describes an ingenious and complicated machine operated by a type of engine never used before in road locomotives, employing with safety a highly volatile and dangerous fluid. The carriage of the patent is easily handled; it economizes space and may be managed by one possessing no expert knowledge. It cannot be maintained, upon the English specifications alone, that the construction of such a machine required no inventive skill. It is possible, if not probable, that a light road carriage equipped after the English plan would prove a lamentable failure. The doctrine invoked by the defendants, that the transfer of an old device to a new use does not involve invention, if applied without qualification or exception, would destroy many of the most valuable patents. See Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275. At pages 606, 607, 155 U. S., page 198, 15 Sup. Ct., and pages 278, 279, 39 L. Ed., the court discusses a large number of situations in which the rule is inapplicable and concludes with the following pertinent observation:

"Indeed, it often requires as acute a perception of the relation between cause and effect, and as much of the peculiar inventive genius which is characteristic of great inventors, to grasp the idea that a device used in one art

may be made available in another, as would be necessary to create the device de novo."

The court is clearly of the opinion that the immense weight of authority sustains the proposition that this patent cannot be held invalid on demurrer.

The court has refrained from discussing the subsidiary questions mooted on the briefs as they may appear in a totally different light after the proof is presented. The demurrer is overruled, with costs. The defendants may answer in 60 days.