### HALE & KILBURN MFG. CO. v. ONEONTA, C. & R. S. RY. CO.

(Circuit Court, N. D. New York. July 18, 1903.)

1. PATENTS—INVENTION—NEW COMBINATION OF OLD ELEMENTS.

A new combination of old elements, so made as to produce a new result, and to accomplish a purpose long sought to be accomplished, but in which all others have failed, by making a completed structure, which is useful and valuable and superior to all those of the prior art, constitutes invention.

2. SAME—NEW USE OF OLD DEVICE.

The transfer of an old device to a new use in a different art may involve invention.

¶ 1. See Patents, vol. 38, Cent. Dig. § 29.

**8. SAME—INFRINGEMENT—SPRING SEATS.**

The Hale patent, No. 371,448, for a spring seat, which covers a combination, the principal feature of which is the use of a wide, thin steel plate secured to the top of the springs, and which supports the upholstery was not anticipated, and not only discloses invention, but made a material advance in the art. Claim 6 construed, and *held* infringed by a seat embodying the same construction, the only substantial difference being in the use of ductile iron plates or sheet-iron strips instead of the steel plates, both being well-known equivalents.

In Equity. The bill of complaint in this action was filed to obtain an injunction restraining the defendant from infringing, by making, selling, or otherwise, letters patent No. 371,448, bearing date October 11, 1887, granted to Henry S. Hale, and assigned to the complainant, and to recover damages for alleged infringement, through an accounting.

Samuel Owen Edmonds, for complainant.
George H. Knight (Harry E. Knight, of counsel), for defendant.

RAY, District Judge. October 11, 1887, the letters patent in suit were issued to Henry S. Hale, numbered 371,448, for a spring seat. Thereafter, and before the commission by the defendant of the acts complained of, the complainant became, by due assignments, the owner of such letters patent. Infringement of claim 6 alone is relied on. That claim reads as follows:

"(6) In a spring seat, the combination of the frame, springs supported by the frame, a wide, thin steel plate, covering a large area of the seat, and directly supporting the upholstery, and secured to the springs at their upper parts, and having transverse corrugations, and textile bands extending over said corrugated steel plate, and secured on its ends to frame of the seat, substantially as and for the purpose specified."

In the specifications the inventor, Hale, said:

"My invention has reference to spring seats, etc.; and it consists in certain improvements, all of which are fully set forth in the following specification, and shown in the accompanying drawings, which form part thereof. Heretofore, in the manufacture of spring seats and similar articles, it has been customary to secure to the top of the springs short, narrow, metallic connecting bars, upon which flexible wooden slats, usually combined with textile bands, were secured, the metallic bar acting as a connection between the springs, and also as a support for the flexible wooden or compound slats, as set out in my patents Nos. 259,533 and 256,676, of 1882. This construction is expensive and unsatisfactory, and lacks durability and simplicity. The object of my present invention is to overcome the above objections by providing the tops of the springs with a wide, thin, flexible metal plate, capable of bending readily under the pressure of the person occupying the seat. The wide, flexible plates are preferably covered with still wider bands of textile material, which extend over the lateral edges, and also project over the ends sufficiently to be secured to the box frame, these bands thereby protecting the edges of the spring plate. The spring seat or other frame made up of a number of such elements is covered with a sheet of fabric which rests upon the textile bands, and is thereby protected from being cut by the metal plates, and upon this sheet the upholstering is placed. This construction of spring frame may be used with or without the edge springs, but when the latter are used I have a spring-edge seat of very superior construction. The invention is equally applicable to lounges, chairs, beds, etc. * * * The essential feature of the invention is the wide, thin, flexible metal plates, preferably steel, supported on springs. The covering bands of textile material may be made of any width, but preferably still wider, so that the lateral edges of the

bands will project slightly over the lateral edges of the steel plates, to protect the edges thereof against cutting the sheet of textile material placed above the last-mentioned bands, and designed to support the upholstering. The bands above the plates are also made long, to cover the ends of the plates, as well as their corners, forming a complete shield, and yet not interfering with the flexibility of the seat. If desired, the upholstery may rest directly upon the wide metal plates. I do not limit myself to the exact details, as they may be modified without departing from my invention."

Prior to the granting of the patent in suit, the complainant had a patent for a spring seat consisting of a frame with slats on the under side to support the springs, necessarily high, about 15 in number. Extending over each set of springs (those on each slat being called a "set"), and attached thereto, was a narrow strip of iron or steel; and these, in turn, were covered by a long piece of canvas or buckram, drawn down firmly and attached to the frame on each side. This, in turn, was covered with narrow strips of wood, glued to the canvas, and fastened to the iron or steel strips by means of bolts. Then came the cushion, covered by a willow or rattan webbing, or cane seat covering, covering the whole five sections of springs and strips of iron and wood. This was bulky and costly in construction. The springs were easily gotten out of place, were liable to wabble, and the strips of wood easily became detached. The giving or bending was not uniform, and the seat was liable to become uneven, and wore out quickly. The inventor, Hale, worked long and patiently, expending time, money, and thought, to remedy these defects, and others not necessary to describe, and finally produced and patented the seat in suit, which at once became popular—found a ready and steady market; in other words, proved a success in every respect. In this patent (in suit), the frame, and slats on which the springs rest, are the same. The springs are shorter, and are covered by wide strips of corrugated steel. The strips of wood glued to canvas are discarded, and the cushion rests on the steel strips. Oscillation and displacement of the springs are obviated. The bending under weight or pressure is much more uniform, and when the pressure is removed the springs and whole structure resume their original position. Wear and tear are largely reduced, as are the bulk and cost of the seat. Other advantages might be named. The defendant has hastened to copy this seat in every respect. It claims, however, that it uses indented or grooved ductile iron plates, or ductile sheet-iron strips, in place of steel plates, or strips above the springs, and that this is the substitution of a new material, and there is no infringement in this respect.

In the complainant's seat the wide steel plates covering the springs (in each section) are covered by strips of some tough and durable textile material, attached to the frame on each side, and drawn taut, holding or assisting to hold the springs in place and prevent too great relaxation. In defendant's seat the same thing is used in the same manner, but is made, in actual construction, somewhat narrower than the complainant's patent permits, it is claimed; the defendant's band above the plates being narrower than the plates, while it is contended that the complainant's patent is so limited as to confine these bands to a construction wider than the steel plates.

It will be noted that in the Hale patent the specifications say:

"The essential feature of the invention is the wide, thin, flexible metal plates, preferably steel, supported on springs. The covering bands of textile material may be made of any width, but preferably still wider [meaning wider than the steel plates], so that the lateral edges of the bands will project slightly over the lateral edges of the steel plates, to protect the edges thereof against cutting the sheet of textile material placed above the last-mentioned bands, and designed to support the upholstering. The bands above the plates are also made long, to cover the ends of the plates, as well as their corners, forming a complete shield, and yet not interfering with the flexibility of the seat."

The patentee then says:

"I do not limit myself to the exact details, as they may be modified without departing from my invention."

This court is of the opinion that the substitution of ductile iron plates or ductile sheet-iron strips, slightly grooved or indented, in place of the corrugated steel strips or plates used in the complainant's construction, does not free the defendant from the charge of infringement. This is the mere substitution of a well-known equivalent. Inferior it may be, but it is the same thought, and substantially the same material is used in precisely the same way to serve the same purpose. Neither can the defendant escape the charge of infringement on the theory that its textile bands above these plates are not wider, but in fact narrower, than the iron plates. These bands are in all essential respects and features the same, and are used in the same manner to accomplish the same purpose. Both the bands and the plates are used in the same manner, in the same place, and to accomplish the same result, as are those of the complainant; and, in the opinion of this court, this is a clear infringement. If anything, the defendant's construction is inferior to that of the complainant's; but the defendant has approached the complainant's construction in every material respect, so far as it dare, without making an exact copy, hoping, it is evident, thereby to escape the charge of infringement. Such slight differences and changes do not defeat the charge of infringement, when the construction, combinations, and purposes intended and purposes accomplished are precisely the same.

The value and utility of the complainant's patent is beyond dispute, and is demonstrated by the fact that it has taken the place of most others. This is further evidenced from the fact that the defendant, in order to keep pace with the complainant's construction, has found it necessary to follow and copy in every essential feature.

We find, on a careful examination of the seats themselves and of the evidence, that the complainant has a strong and durable seat, comparatively inexpensive, both in the making and in the installing, and one easily kept in order. The complainant's seat is elastic in all directions, and this elasticity is obtained without the use of excessive upholstery, and the construction is such that the upholstery keeps its shape, and may be kept dry without great difficulty. The complainant's seat is compact, and sufficient space is left below the cushion for heating pipes. The complainant's seat is light and easily handled, and noiseless in its operation, and the

construction is such that an injury or broken part may be removed, and a new one substituted, without disturbing substantially the remainder of the seat. This court has carefully examined the evidence and the state of the prior art in the construction of spring seats, and finds a vast improvement, as well as a wide difference in construction. It is quite true that, taking each element of the complainant's seat by itself, we find nothing particularly new. The frame is the same as that used in the prior art. The slats supporting the springs are the same. The coiled springs are the same, except they are shorter. The wide bands of corrugated steel are new in the construction of spring seats, but bands of corrugated steel of this thickness are not new. We have a new use in a new combination for corrugated steel plates of this thickness. The textile bands used to hold these springs in place are substantially the same as those used in the prior art, but the mode of attachment differs somewhat. The whole is then covered with a wide band of textile material, attached to the frame, above which is placed the upholstery itself. The complainant has not patented any one of these elements, as distinguished from another, but he has secured a patent, as described in claim 6, "in a spring seat, the combination of the frame, springs supported by the frame, a wide, thin steel plate, covering a large area of the seat, and directly supporting the upholstery, and secured to the springs at their upper parts, and having transverse corrugations, and textile bands extending over [that is, above] said corrugated steel plate, and secured on its ends to frame of the seat, substantially as and for the purpose specified." The object and purpose specified need not be repeated here. They already have been quoted. We have here old things, and we may say well-known things, as the frame, the slats, the springs, corrugated steel plates, textile bands, and upholstery; but we have something more, and herein lies the invention and inventive skill and the patentability of the structure, to wit, we have a new combination of these old elements, so made as to produce a new result, and to serve a purpose long sought to be accomplished, but which all others have failed to accomplish. The result is a new seat, a useful seat, a valuable and a durable seat, a seat that supplies the wants of the trade and the wants of the builders and users of cars. It cannot be doubted that this constitutes invention. A careful examination of all the prior patents and structures to which attention has been called demonstrates that this is a new idea and a new combination, and that the complainant is entitled to the benefits of the Hale patent and invention which is new. The defense of anticipation is not sustained.

The complainant starts with the presumption that his patent is valid. "When a device has a new mode of operation, which accomplishes beneficial results, 'courts look with favor upon it,' and are not exacting as to the degree of inventive skill which was required to produce the new result. There must be some, but a little will suffice." Hoe v. Cottrell (C. C.) 1 Fed. 603. Experts will necessarily differ as to the degree of inventive skill required to produce the complainant's spring seat, and some might contend that no inventive skill whatever is involved. Such a contention is successfully com-

bated when we find that many have struggled for years to accomplish the result produced by Hale, but that no one succeeded until he brought forward the seat constructed under and pursuant to letters patent No. 371,448, the patent in suit.

The main change between the old Hale patent and the new patent, the one in suit, is the shortening of the springs, and the substitution of the corrugated steel plate for the appliances before used. It may be contended that a corrugated steel plate is an old device. Concede this to be true; still the transfer of an old device to a new use may involve invention. Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275. In that case the court said:

"The doctrine invoked by the defendants, that the transfer of an old device to a new use does not involve invention, if applied without qualification or exception, would destroy many of the most valuable patents."

In Electric Vehicle v. Carriage Co. (C. C.) 104 Fed. 815, the court said:

"Indeed, it often requires as acute a perception of the relation between cause and effect, and as much of the peculiar inventive genius which is characteristic of great inventors, to grasp the idea that a device used in one art may be made available in another, as would be necessary to create the device de novo."

In General Electric Co. v. Wise (C. C.) 119 Fed. 926, this court said:

"However close the resemblance between some prior alleged invention, even when put in actual use, and the patented invention, if such alleged prior invention was not operative, and failed to produce the beneficial results sought and produced by the patent, it could not constitute prior invention. In such case the patented invention cannot be regarded as old."

The prior inventions in this art, when put in use, were, to an extent, operative, but they were costly, and not durable; nor did they fill the wants of the trade and of users of spring seats. The complainant's patent is a step far in advance of all others, by means of a new combination of old things.

Attention is invited to the language of Judge Coxe in McMichael & Wildman Mfg. Co. v. Stafford (C. C.) 105 Fed. 382; also to his language in George Frost Co. v. Cohn (C. C.) 112 Fed. 1009, affirmed (C. C. A.) 119 Fed. 505. Again attention is called to the language of Judge Coxe in Fairbanks Wood Rim Co. v. Moore (C. C.) 78 Fed. 490.

In the George Frost Case he said:

"A woman who was ambitious to have her hosiery intact was liable to find it slouching about her heels. It seemed impossible to secure a supporter that would adapt itself alike to thick and thin stockings. If it succeeded in holding the former, the latter would slip from its embrace. For years an army of inventors and skilled mechanics were at work to remedy these defects. All sorts of expedients were resorted to, but the old difficulties remained. At length Gorton substituted for the metal button a button with a rubber shank, and the thing was done. * * * Rubber, in almost every conceivable shape and form, was everywhere in use, but no one thought of it. Like a jewel lost in a crowded thoroughfare, multitudes pass it unnoticed; some actually tread upon it; others stop and gaze for a moment, but hurry on, deeming it some worthless tinsel; at last comes some one who recognizes its value and picks it up. Others might have done this, it is true, but they did not; he did, and

is entitled to the prize which he has rescued from the mire. * * * It is this capacity for accomplishing results, this faculty of seeing what others fail to see and hearing what others fail to hear, which has always distinguished success from failure, and the inventor from the mechanic. 'In the law of patents, .it is the last step that wins,' says the Supreme Court. This is the step which Gorton took."

In the Fairbanks Wood Rim Co. Case he said:

"It was not the mere substitution of wood for iron. It was the substitution for a rim made of a single piece of metal of a laminated rim made of a series of sections, so constructed as to form a compact, durable, symmetrical, and highly efficient structure. After the idea that wood could be used, instead of metal, was conceived, the real work of invention began. * * * Two significant facts stand unchallenged: First. that the patentees were the first, in an art which has attracted a multitude of ingenious inventors, to employ a wooden rim; and, second, that to-day this rim is the only one used, all others, in the construction of first-class machines, having been driven from the market. They certainly have done much to make the modern bicycle a perfect machine."

It is not thought necessary, nor would it be profitable, to enter into a detailed description of prior invention claimed to show anticipation. Those who have sat or slept upon some of them, or attempted to, and have endured the discomforts of their imperfections, the more readily appreciate the worth of the Hale patent when actually used, and a comparison is made.

The Cobb patent for car or other seats, issued May 8, 1883, No. 277,115, used a flexible and elastic preparation or composition, the base of which is paper, and known to the trade as "vulcanized fiber" and "leatheroid," where the Hale patent uses the steel plate, and the mode of attachment to the frame was different. This was a. failure. The Cobb patent does not show or establish anticipation.

Clearly, the Casseday patent, No. 100,116, dated February 22, 1870, being a seat composed in the main of a number of curved or elliptical springs secured to a frame and arranged side by side, but a short distance apart from each other, in combination with a covering of plush or other suitable fabric, falls very far short of showing anticipation. Many other prior patents for spring beds and spring seats have been carefully examined, and, while some of them probably suggested ideas to the patentee, Hale, none of them show all the elements or the combination of elements found in the Hale patent. These prior inventors struggled with a problem, strove to attain a desired end—to produce an article millions felt the need of—but they all failed, and Hale came in, and by a new combination produced the desired result.

The defendant has failed to establish either of his defenses, and the complainant is entitled to the injunction prayed for and to an accounting. A decree will be prepared accordingly.