## BRISTOL v. OTIS ELEVATOR CO.

### No. 4472.

Circuit Court of Appeals, Third Circuit.
April 13, 1931.

Rehearing Denied Sept. 18, 1931.

Pennie, Davis, Marvin & Edmonds, of New York City (W. B. Morton and R. B. Canfield, both of New York City, of counsel), for appellant.

Wicoff & Lanning, of Trenton, N. J. (Wallace R. Lane, of Chicago, Ill., Harry E. Knight, of Washington, D. C., Clarence J. Loftus, of Chicago, Ill., and Herbert H. Knight, of Washington, D. C., of counsel), for appellee.

Before BUFFINGTON and THOMPSON, Circuit Judges, and THOMSON, District Judge.

THOMSON, District Judge.

The patent involved in this case relates to an improvement in an oiling device, arranged to apply a lubricant to guide rails of elevators. The device is adapted to be attached to the upper end of a guide rail, and is in the form of a reservoir, from which the lubricant is fed by wicks in containers with flexible conductors or feeders. The wicks supply the oil to the feeders by capillary attraction; the feeders acting as conveyors for the oil to trickle down by gravity to and along the guide rails.

Suit was brought on claims 1 and 3, but, at the conclusion of the case, the court below dismissed the bill. From the decree so entered, the plaintiff appeals.

Before the advent of plaintiff's stationary lubricator, the guide rails were lubricated either by hand or by traveling lubricators. In the hand-swabbing method, a man rode on the top of the car, and, while the car was moved slowly up and down the shaft, the mechanic brushed the grease onto the rails. This method was objectionable, as it was hazardous to the mechanic, as well as inefficient, because costly in labor, the car being temporarily taken out of service, and the rails being liable to become dry through irregular lubrication.

The next was the traveling lubricator, which was mounted on the car, and arranged to apply the oil to the guide rails as the car traveled up and down the elevator shaft. While this was an improvement on the method of hand greasing, these lubricators were subject to constant inspection and cleaning, which was difficult to perform, as the devices were mounted on the tops of the cars, in an inaccessible location, the mechanic placing himself in a dangerous position to make the inspection and fill the lubricators.

In the patent in suit, the inventor proposed to supply the oil to the top of the rail, and let it run down the rail continuously, being spread over the rail surfaces by the guide shoes. The patentee was the first to discover and provide a stationary lubricator to be attached to the top of the rail, with mechanism for flowing the oil onto the surface of the rail in a manner to make the method successful. Flowing the oil continuously onto the wearing surface of the guide rail at a rate so slow as to involve no waste of oil is the new principle of operation. The problem involved was not merely getting the oil out of the container in a regulated flow. In many devices, the oil reservoir was mounted above horizontal surfaces, the oil from the containers falling by gravity onto the surfaces of the bearing. The problem was wholly different in the lubrication of long elevator guide rails used in high buildings. A liquid may be rubbed onto a vertical surface, but it is impossible to drop a lubricant onto a vertical surface. While elevators have been in use for long years, and gravity lubricators for horizontal bearings were old, no one before this patentee had solved the problem of distributing the oil by gravitation alone to the vertical surfaces of the elevator guide rails.

To state the case briefly: The device is a stationary lubricator, mounted at the top of the elevator rail, with specific means for providing a continuous flow of oil from the reservoir to the vertical faces of the rail. The patent not only discloses a novel type of elevator lubrication, but also describes and claims a definite combination of elements, namely, a reservoir, a duct, a wick, and a flexible resilient feeder, extending from the duct and wick to feed the oil continuously to the faces of the rail. None of the citations suggest this combination of elements. To anticipate a combination, the combination in its entirety must be old.

Claims 1 and 3 as originally applied for were at once granted. Nothing was cited against them. Their terms are plain. We are of opinion that they are broad enough to cover the device so described, and that they contain a new and useful invention. The operation of the defendant's flexible resilient feeder is similar to the plaintiff's feeding the oil from the pointed tips of each of the feeders to the centers of the three separate wearing faces of the rails. It is reasonably clear that defendant's lubricator differs from the plaintiff's only in form. In its purpose, in its method of operation, and in the combination of elements, by which that operation is secured, the defendant's device follows the teachings of the plaintiff's patent. While the defendant's duct is not carried the whole way, by reason of a functional section of the duct being omitted, the equivalent of an inclosed duct is used down in what is called a distributor. This small tank is really a confining duct which prevents the sidewise escape of oil, takes care of a surplus flow, and has attached to it, and projecting from it, the flexible resilient feeder which plaintiff's claim calls for, and which was new in

the art, in that no one had used or had occasion to use such a feeder along vertical lines. The utility of the patented device is shown by what occurred in the trade. As soon as the trade became familiar with the construction and operation of the patented lubricator, its superiority was recognized, not alone by the trade generally, but by the defendant in particular. Beginning in 1922, they made small purchases of this lubricator, and increased their purchases, until in 1926 the Otis Company purchased three-fifths of its lubricator requirements from the plaintiff; the other two-fifths being divided among some ten other makes. It was not until 1927 that defendant notified the plaintiff that henceforth it intended to manufacture its own lubricator, and as a result the alleged infringing device was brought out by the defendant.

Claims 1 and 3 of the patent in suit should have been held valid and infringed, and the decree of the court below, dismissing the bill, should be reversed.

### On Petition for Rehearing.

### PER CURIAM.

The petition for a rehearing or modification has had our careful consideration. We cannot agree with the contention that our construction of the patent is at variance with a decision of the Supreme Court, Hannah M. Smith, Administratrix, etc., v. Magic City Kennel Club, Inc., et al., 282 U. S. 784, 51 S. Ct. 291, 75 L. Ed. 707, handed down subsequent to the filing of our opinion. That case announced no new principle of patent law, but simply applied the familiar principles of that law to the facts of the case before it. That is precisely what we do in the case before us. It is true the claim before us has the element of "a flexible resilient feeder within said duct and projecting therefrom." In our opinion we showed that the defendant's tank or distributor was in function an inclosed duct, or, as we expressed it, a "confining duct which prevents the sidewise escape of oil." We also showed that this distributor or functional duct "has attached to it and projecting from it, the flexible, resilient feeder which plaintiffs' claim calls for and which was new in the art, in that no one had used, or had occasion to use, such a feeder along vertical lines." Such being the physical facts, it is clear that when one side wall of the tank or distributor is part of the inclosing duct, so also is the opening in the side wall through which the oil passes a continuation of the inclosing duct, and when the defendant's flexible, resilient feeder reaches into such side wall opening, it is just as much within the confining duct, for all practical and functional purposes, as though the outlet on the side wall were extended by a pipe into the middle of the tank and thus complies with the literalism of the claim. In other words, while the defendant physically has simply an outlet through the side of the tank, yet that outlet functionally extends into the tank because it draws oil from every part of the confining tank in precisely the same way it would do if, instead of there being a hole in the tank side, defendant had a pipe extending from the side wall to the center of the tank. In other words, while departing from the plaintiffs' device in form, the defendant has taken in substance and function the plaintiffs' claim in its novel entirety. Regarding defendant's outlet device as the functional equivalent of the plaintiffs' "flexible resilient feeder within said duct," we adhere to our decision. Accordingly, defendant's motion is denied.