## HAMILTON–BEACH MFG. CO. v. P. A. GEIER CO.
### No. 5201.

Circuit Court of Appeals, Seventh Circuit.
Dec. 21, 1934.

Fred Gerlach and Norman H. Gerlach, both of Chicago, Ill., for appellant.

Harry Frease and Joseph Frease, both of Canton, Ohio, and Warren G. Wheeler, of Milwaukee, Wis., for appellee.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

Appellee brought this suit to restrain further infringement and recover damages for past infringement of its patent No. 1,517,811 to Willis for a switching handle.

At the conclusion of the trial, the patent was held valid and infringed and an accounting ordered.

The court predicated its decree upon formal findings of fact in which it found that appellee was the owner of United States letters patent No. 1,517,811, dated December 2, 1924, for improvements in switching handles (for use on vacuum cleaners and kindred devices); the letters patent having been granted to appellee as the assignee of Olo C. Willis, the inventor. Appellee commenced the manufacture and sale of vacuum cleaners with handles embodying the claims of the patent in suit in 1919. Appellant commenced to manufacture the alleged infringing handle early in 1922, and has used it continuously since that time. Appellee's patent issued December 2, 1924, and on December 22, 1924, appellee brought suit against an infringer, which suit was settled in May, 1928, and a consent decree entered sustaining the patents and finding infringement thereof. Licenses under the Willis patent have since that time been taken by numerous manufacturers of vacuum cleaners so that about 80 per cent. to 90 per cent. of the portable electric cleaners made and sold since the issue of the Willis patent have been made and sold by appellee and its licensees under that patent. The prior art Kirby patent, No. 1,195,363, was assigned to Electric Vacuum Cleaner Company, which took a license under the Willis patent; and the prior art Stecker patent, No. 1,268,173, was assigned to the Eureka Vacuum Cleaner Company, which took a license under the Willis patent, recognizing the merit of Willis over Kirby and Stecker.

The court found that the pistol grip and the trigger·switch were old, but the Willis

construction embodied greater convenience in having the switch at the bottom of the handle and more readily adapted to operation by one hand and being easily removable without dismantling the handle. It found that appellant's switching handle was substantially of the same construction described in the Willis patent and accomplished the same objects.

While the proof showed the lapse of a considerable length of time during which the appellee might have known of the infringement but did not press it, the court found appellee was not estopped by laches from having the relief prayed for.

In his application for the patent in suit, Willis described his invention and its purpose as follows:

"My invention relates to improvements in switching handles such as are particularly adapted for use with electrically actuated appliances adapted for manual use. More particularly, the handle of my invention is designed and adapted for the actuation and control of suction cleaning apparatus; the needs of which are exacting and peculiar.

"I am aware that in certain prior handle structures provided for a similar purpose, upwardly protruding switch members have been designed, which are adapted and intended to be actuated by a sliding movement of the thumb. This mode of actuation, however, necessitated by the above construction requires the release of the handle by operative's thumb. Moreover, such prior switches are not intended nor adapted for ready removal, inspection and repair. These results, on the contrary, are attained in my improved construction by providing an electrical unit which is easily removable from the handle.

"In the manipulation of a portable suction cleaner, it frequently is necessary slightly to tilt, and thereby break the seal of the nozzle, in order to afford a sudden inrush of air and pick up small particles. The rigidly locked pistol grip is admirably adapted for this and other modes of using and manipulating the cleaner.

"Furthermore, the switch trigger, positioned as it is for the convenience and almost instantaneous actuation of the user's first finger, affords the most efficient means known to me for the electrical control of the connected appliance. This may not appear to be of much importance upon first impression, but the fact remains that not infrequently the fan of the suction cleaner should be instantly stopped, as when a portion of a curtain or hanging is drawn accidentally into the nozzle. With the ordinary type of switch control, two or more fingers, or the disengaged hand of the operative, are required to turn the switch on or off, with some attendant delay. This obviously is not the case with my improved construction, for the reason that the finger is invariably in position, with the user's hand upon the pistol grip, either to turn the switch off or on at a moment's notice. This is accomplished without removing the hand from the pistol grip or losing manual control of the attached suction sweeper.

"Another important advantage attained by positioning the trigger switch substantially at the inner angle of the handle is its protection from damage, not only to the trigger, but the switch parts themselves, in the event that the handle falls or is struck violently to the floor. Moreover, the trigger will not catch, either to operate the switch inadvertently or break the switch parts, when the suction cleaner is used beneath articles of furniture, such as pianos, tables, couches and the like. It will also be observed that the spring-protected conducting cord f is brought out of the mounting plate at a sufficient distance beyond the trigger so that it will not foul the trigger or impede its operation in any position in which the suction cleaner may be used."

Claims 1, 3, and 5, which are typical of all the claims in suit, are set forth in the margin.[1]

1. A switching handle of the class described, comprising a pistol grip, an associated tubular portion laterally slotted along its under side and angularly connected with the grip, a mounting plate normally closing said slot and a downwardly protruding switch trigger mounted thereon adjacent to said pistol grip in position to be readily actuated by the finger of the operative, substantially as set forth.

3. A switching handle of the class described, comprising a tubular receptable laterally slotted along a portion of its under side, a mounting plate normally and removably positioned to cover said slot, a switch carried on the inner side of said plate, a conducting cord unit extending through said plate to and from the switch, a switch trigger exteriorly positioned on the mounting plate for operating the switch, and an angularly extending pistol grip adjacent to the trigger, substantially as set forth.

5. A switching handle of the class described, comprising a tubular shank-por-

Appellant contends that the court erred, first, in holding the patent to be valid, it being an aggregation of old elements and substantially anticipated by the prior art; second, in holding that appellant has infringed; third, in not holding that appellee has been guilty of such laches as to preclude any recovery.

A reading of the claims of the patent in suit discloses that all are combination claims; the patentee thereby admitting that there was no novelty in the elements combined, but claiming that new and useful results are attained by his particular combination of old and familiar elements. The appropriate law to be applied to such a claim for a combination patent is clear. It is well stated in Robinson, §§ 155 and 156; Webster Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177; Leeds & Catlin Co. v. Victor Talking Mach. Co., 213 U. S. 301, 29 S. Ct. 495, 53 L. Ed. 805; Hamilton Beach Mfg. Co. v. P. A. Geier Co. (C. C. A.) 230 F. 430; Hale & Kilburn Mfg. Co. v. Oneonta, C. & R. S. R. Co. (C. C.) 124 F. 514; Steiner & Voegtly Hardware Co. v. Tabor Sash Co. (C. C.) 178 F. 831; Emerson Electric Mfg. Co. v. Van Nort Bros. Electric Co. (C. C.) 116 F. 974, 977.

The patent in suit involves three elements, the pistol grip, the trigger switch, and the mounting plate. None of these elements was new. But the court finds that placing the trigger switch in the precise location beneath the pistol grip produced a switching handle which operated more conveniently and successfully and made it possible to manipulate the equipment readily with one hand. The particular arrangement of old elements produced a combination which operated in a different and more convenient manner.

In Emerson Electric Mfg. Co. v. Van Nort Bros. Electric Co., supra, the court said:

"The invention of the patent under consideration is the combination in one device of all the three elements so alleged to have been shown by prior patents in such a way and manner as to produce a new and useful result, or at least to produce the old result in a more facile, economical, and efficient way. If the combination produces such result by the joint and co-operating action

of the elements combined, even if they are old, it is invention within the meaning of the patent law, notwithstanding the fact that each of the elements separately considered or in other combinations were old and well known to the art. Brinkerhoff v. Aloe, 146 U. S. 515, 13 S. Ct. 221, 36 L. Ed. 1068. From the foregoing considerations it is clear that any of the prior patents which disclose only single elements of the patent in suit, co-operating with its associate member or members on a different principle of action, cannot avail the defendant as anticipations of the invention of Meston."

It is not necessary, nor would it be profitable, to enter into a detailed description of prior invention cited as showing anticipation. As was so well observed by the District Court, those who owned the prior patents and had manufactured handles under them were among those who procured licenses to manufacture under the Willis patent. In the case of Wahl Clipper Corporation v. Andis Clipper Co. (C. C. A.) 66 F.(2d) 162, 165, the court said:

"More persuasive evidence than the action of competitors in taking licenses and paying substantial royalties for the privilege of selling the patented article can hardly be found."

It is contended by appellant that this evidence is of little value in the instant case because the consideration paid for the right to manufacture under the patent was in some cases so small as scarcely to amount to a "substantial royalty" and that in other cases the acquisition of this particular license was induced largely by other patents which were included in the group. While this is true of some of the licenses given by appellee, it is not true of others. Some of the licenses issued were issued independently and for substantial consideration, and, furthermore, the licensees ceased to manufacture handles under their former patents and changed to that of Willis.

In a case of this sort, opinions may differ as to the degree of inventive skill required to produce a given combination. While it is true that commercial success and universal adoption will not dispense with the necessity that the combination disclose invention, they are cogent evidence of its pres-

tion laterally slotted to receive the switch, a mounting plate normally but removably covering said slot, a switch mounted upon the inner side of said plate and adapted to be inserted laterally within the slot, a switch trigger adjacent to the outer end

of the plate, a conducting cord adjacent to the other end of the plate and extending to the switch, and a handle-portion extending at an angle from the shank-portion in protective position above the trigger, substantially as set forth.

ence. In the instant case the trial court found that 80 per cent. to 90 per cent. of the portable electric cleaners made and sold since the issuance of the Willis patent were made and sold by appellee or its licensees.

In the case of Wahl Clipper Corporation v. Andis Clipper Co., supra, this court said:

"In most instances, the judgment of those who pay their money to secure the benefits of the patented article is truer and better than the opinion of experts or the speculations of an arbitrator. Inasmuch as experience is more reassuring than theorizing, and history more certain than prophecy, so the test of public approval, if uninfluenced by detracting factors, must afford the weightiest proof obtainable determinative of invention. In short, in construing the patent statute, which was enacted to promote the useful arts, it is more important to study those developments of the art which are bright with use in the channels of trade than to delve into abandoned scrap heaps and dust-covered books which tell of hopes unrealized and flashes of genius quite forgotten. The somewhat meaningless terms 'inventive genius' and 'mechanical skill' must be clarified by an examination of the article itself, and if the improvement be unusual, or if there be doubt, and the public has given its tribute, the judge should accord to the creator of the article the title of inventor."

■ Coming to the question of infringement, we think the trial court correctly held that the handle manufactured by appellant is an infringement of appellee's patent. There is an immaterial difference in the shape of the handle, but appellee's patent cannot be construed so narrowly that it will not cover the handle manufactured by appellant. Claim 5 clearly covers appellant's device in describing broadly "a tubular shank-portion * * * and a handle-portion extending at an angle from the shank-portion in protective position above the trigger, substantially as set forth."

Appellant further contends that the facts in this case establish such laches upon the part of appellee as to estop it from recovering in this action. It contends that it has been manufacturing the alleged infringing device since 1922, that it has been continuously and extensively sold and nationally advertised, and that at least some of the persons in appellee's organization had knowledge of the switch construction being used by appellant several years before suit was brought. Appellee asserts, on the contrary,

that appellant's infringement of the Willis patent first came to its attention when it purchased the Hamilton-Beach cleaner in 1930, at which time the Hamilton-Beach cleaner first became actively competitive with appellee's machine. It immediately notified appellant that it was infringing the Willis patent and offered it a license. Failing in these negotiations, appellee brought suit.

The trial court, who heard the evidence on the question of whether appellee had knowledge that appellant was manufacturing an infringing device, said:

" * * * The proof does not show much more than a lapse of a considerable length of time, during which the plaintiff may have known of the infringement but did not press it. * * * all depends on what they knew in the meantime and who knew it. We might find upon the proof here that somebody connected with the plaintiff company, the Geier Company, may have known this, but whether the plaintiff, as the owner of the patent, had committed itself to a course of inaction, with knowledge that infringements were taking place and under circumstances which would lead the defendant, the alleged infringer, to believe that the plaintiff, knowing it, intended not to insist on the patent; that is the test after all. * * * I indicated I did not think the proof sustained the defense of laches in this case. The most the defendants could say is that the plaintiff was pretty slow in suing them. That is not laches. If they indicate indifference or slowness in moving, but there may be coincident with that a rather flagrant violation. The question may arise, why didn't you sue earlier? One answer is that they did not know until more recently. For the purpose of testing out that defense, I would be willing to say here that the means of knowledge of the defendant's infringement were probably open to the plaintiff. * * * but that is not a defense of laches."

■ Here the facts fail to show that appellee had actual knowledge of the infringement by appellant until 1930. They do show that appellant began to manufacture the infringing device in 1922, before appellee's patent had issued, and there is no showing that it has relied upon appellee's inactivity in enforcing the patent or that it has been damaged thereby. Under these circumstances the trial court properly held that the defense of laches had not been established. Rajah Auto Supply Co. v. Belvidere Screw & Mach. Co. (C. C. A.) 275 F. 761; Howard v. Howe (C. C. A.) 61 F.(2d) 577.

Affirmed.