**JUNGERSEN v. JENKINS et al.**

No. 216.

District Court, D. Maryland.

Aug. 3, 1939.

Irvin Siegael, of Baltimore, Md., and A. Yates Dowell, of Washington, D. C., for plaintiff.

Samuels & Clark (by Thos. W. Y. Clark), Baltimore, Md., for defendants.

CHESNUT, District Judge.

This is a patent infringement suit in customary form, but it has been submitted for determination in an unusual manner. It appears that on or before the filing of the suit the defendants employed counsel, who have appeared for their clients in the case, but instead of filing a formal answer counsel for both parties have filed stipulations with regard to the case, the effect of which is that infringement is admitted, but the validity of the patent is submitted for determination by the court.

A trial date for June 30, 1939 was stipulated by counsel. On the call of the case defendants' counsel was not present but upon being sent for by the court appeared and stated that he was not authorized or employed by the defendants to further actively defend the case, although the right was reserved to file a brief within ten days. Counsel for the defendants then withdrew; and no brief for the defendants has been filed. At the hearing the plaintiff patentee testified generally in support of the patent and gave a demonstration of the patented process. The only question for determination is the validity of the patent.

After hearing the plaintiff's testimony and observing the several steps of the process as demonstrated by him, and hearing plaintiff's counsel and a review of the papers in the case, I have reached the conclusion that the patent is valid.

The patent in suit is United States Patent No. 2,118,468, issued May 24, 1938 on application filed September 28, 1934 by the patentee, Thoger G. Jungersen of Mimico, Ontario, Canada. The patent relates to the jewelry art and shows a new combination, process or method of casting articles of jewelry of intricate design, at a cost very greatly less than by methods previously in vogue in the jewelry trade. The patent has six claims of which five are for a process, and the sixth for the resultant article of jewelry. Claim No. 2 is perhaps the most fully descriptive of the process. It reads as follows:

"A method of casting articles of jewelry of intricate design consisting in, first making a model of the article desired to be cast, then forming a primary mould in separable sections there-around of plastic material capable of assuming intimate contact with the intricate designs of the model and adapted to retain the assumed shape, then removing the model, *then by centrifugal force projecting into the mould cavity and completely filling the same a molten material of a low fusing point* which will not injure the mould, then removing the fusible pattern so cast, then investing said pattern in a refractory material which will assume all the contours of its intricate design to form a secondary mould, then heat treating said investment removing the low fusing pattern therefrom, then by *centrifugal force* projecting molten metal into the heat treated mould, and finally removing said mould from the cast article."

The process is further described by plaintiff's counsel as follows:

"1. Utilizing a model of a piece of jewelry of intricate design to make a primary mold such as a plural part metal mold or a flexible rubber mold.

"2. Forcing molten wax into the depression or depressions of the primary mold *with an applied force* sufficient to deposit the molten wax or other material of low fusing point into the said depression or depressions.

"3. Embedding or 'investing' the pattern thus formed in an 'investment' or plastic mixture such as for example silica or silica and plaster of Paris and subsequently removing the pattern from the mixture to form a secondary mold, which removal may be effected by melting out the wax or other material of the pattern.

"4. Casting molten precious metal in the secondary mold."

(In both the quotation of the claim and from the brief the most important features of the process, from the standpoint of patentability, have been italicized)

The practical value of this new process is explained by the patentee beginning on line 12 of page 2 as follows:

"The ultimate result is that metal castings of rings, brooches and many pieces of jewelry which are frequently very fine and intricate may be produced at the very minimum of cost. For example, with known processes of casting rings, it may take an expert jewelry worker several hours to finish a ring to a certain standard after casting, while with the present process, only fifteen to thirty minutes may be required to finish a ring to the same standard. * * * The process of the present invention will produce rings on a quantity basis without the necessity of making dies,—a huge saving in itself, since a good set of dies costs from $100 to perhaps $1,000. As compared with this excessive investment which the use of dies requires, the present process makes rings and other articles of jewelry at a total cost of from $2 to $3.50 for the first mould. * * * Hence it is clear that the process of the present invention may effect savings up to 90% in the cost of production, especially if the production is for orders of less than 1000."

It appears to be uncontradicted that this new process has created a very great advance in the art of making jewelry. Similar patents for this process have been granted in a number of foreign countries, but notably in England where, after contest, Mr. Justice Luxmoore sitting in the Patent Appeal Tribunal in the Royal Court of Justice, directed that the patent to Jungersen should be sealed. A copy of his opinion has been filed in this case.

■ The United States patent in suit was evidently considered very thoroughly in the Patent Office and its grant is, of course, prima facie evidence of its validity. The patent has achieved very marked commercial success in a comparatively short time in that many jewelers of large business have accepted royalty licenses from the plaintiff who has already received approximately $75,000 therefrom.

■■ The only possible question as to the validity of the patent is based on the

suggestion that it is not really novel in view of the prior state of the art. This question was considered in the Patent Office, and in addition thereto counsel for the defendants made an independent and further examination of the prior art and have referred to a number of additional patents not specifically considered in the Patent Office which, it is suggested, may show lack of invention on the part of the plaintiff. Counsel for the plaintiff, however, point out that these prior patents relate to so-called non-analogous arts such as the sculptors' art and the dental and foundry arts. It is true that many of the steps in the plaintiff's process for making jewelry have heretofore been used in these other arts; but the plaintiff's claim is for the practical application of the combination of steps of his process to the jewelry art to which it had never theretofore been applied and in which it has made a quite definite advance. The plaintiff's use of applied force, such as centrifugal force, as described in Claim 2 of the patent, especially in the making of the wax model as one of the steps in the process, is seemingly the outstanding novel feature of his combination. Although centrifugal force had previously been applied to some extent in one or more of the other arts mentioned, it had not theretofore been used, in accordance with the plaintiff's process, in the jewelry art, which, by reason of the intricate design of various articles of jewelry, is in this respect materially different from the grosser processes in other arts. It seems unnecessary and impracticable in this really undefended case to critically examine in detail the several suggested anticipatory patents in these other arts, without the assistance of argument by counsel for the defendants or any expert testimony with regard thereto. It is sufficient to say that the detailed argument submitted in the plaintiff's brief in the case satisfies me that the plaintiff's patent is not invalid in view of the prior art. The validity of the patent is amply sustained by the well-established principles announced in the following cases: Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523; Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corp., 4 Cir., 40 F.2d 910; McKee v. Graton & Knight Co., 4 Cir., 87 F.2d 262; United States Industrial Chemical Co., Inc., v. Theroz Co., 4 Cir., 25 F.2d 387; Tumbler et al. v. Baltimore Paint & Color Works, Inc., D.C., 11 F.Supp. 183. If the question were really doubtful the element of marked commercial success would, I think, in this case be sufficient to turn the scales in favor of the plaintiff. Bulldog Electric Products Co. v. General Electric Co., 4 Cir., 105 F.2d 466, June 24, 1939.

I have accordingly separately made findings of facts and conclusions of law favorable to the plaintiff's contention and have signed a decree in accordance therewith.