## JUNGERSEN v. MORRIS KAYSEN CO.
### No. 358.

District Court, E. D. Pennsylvania.
Jan. 24, 1940.

A. Yates Dowell, of Washington, D. C. (Karl W. Flocks, of Washington, D. C., and Manuel Steinberg, of Philadelphia, Pa., of counsel), for plaintiff.

Robert I. Silverman, of Washington, D. C., for defendant.

KALODNER, District Judge.

This is a suit in a civil action for patent infringement. The case was tried before me without a jury.

From the pleadings, proofs and briefs it is evident that if Patent No. 2,118,468 to Jungersen is valid, then it is also infringed. The defense is the asserted invalidity of the

patent because of anticipation by the prior art: more specifically, prior patents, prior processes or methods, and prior publications.

The patent is for a method of casting articles of intricate design and a product thereof. Commercially, the articles of intricate design have been metal articles of intricate detail, such as jewelry, which are, in the words of the patent, "designed with hollows, undercut portions and perforations".

Prior to the method covered by the patent, metal articles of jewelry, such as rings for- instance, were also made by a casting process, but the defect in the reproduction of the precise detail of the model was such as to necessitate a considerable amount of hand labor upon the article after casting, in order to bring out the detail which the casting failed to reproduce. This hand labor is an expensive item. It must be done by an "artist"—a skilled jeweler. Even so, the finished product is no exact counterpart of the model.

The above earlier casting method was known as the "Cuttlefish Process". Other methods of making jewelry not involving casting need not be considered, as they could not possibly have any bearing upon the validity of the patent involved in the suit.

The "Cuttlefish Process" involved a single direct casting. The model to be reproduced was impressed in a mould, the model was then removed, and a direct casting made by introducing molten metal into the mould. There is nothing to show that any applied force (such as a centrifugal force) is used in the "Cuttlefish Process" to insure the filling of all slight hollows in the mould caused by the intricate detail of the model. From what I can gather, the failure to obtain full reproduction of detail in the "Cuttlefish Process" is due either to this failure to use an applied force in the casting, or to the fact that the removal of the model from the mould is or can only be done in such manner that small particles of the mould adhere to the model, wherefore the depressions in the Cuttlefish mould are no longer an exact negative of the model.

The plaintiff's method overcomes these difficulties, as will become apparent from the following description.

The plaintiff's method involves two castings.

The model is first produced and then a primary mould—a pattern forming mould —is made about it. This mould must be so constructed and of such materials as to meet the requirements of two functions it must perform—(a) permit the removal of the model therefrom without alteration of the irregularities in the surfaces of the negative left by the model, (b) permit the removal of a wax pattern of the model later formed in the mould, without injury to the pattern.

To meet these two requirements and to effect the purpose of reproduction of intricate detail in the model, the primary mould is preferably made by building up a flexible mould-forming material, such as rubber, around the model—in two sections, a top and bottom section, in which a gate or pouring recess is allowed for. Once the model is surrounded by the mould-forming material, it is vulcanized, causing it to flow "intimately about the detail structure of the model". The mould then assumes a permanent shape with a cavity constituting an exact negative of the model.

The two sections of the mould are then separated and the model is removed. Because of the material of and method by which the mould is made, it is evident that no particles will adhere to the model, and precision in detail of the negative will be maintained.

Once the model is removed, the two sections of the mould are brought together again and a low temperature fusing material, such as wax or Wood's metal (a metal alloy), is introduced under an applied force (centrifugal force or a syringe) through the pouring recess into the negative in the mould. Due to the applied force, the material of the pattern enters every crevice of the negative (the cavity left by the removal of the model); and after cooling a faithful replica of the model once again reposes in the cavity which first contained the original model.

Once more the two sections of the mould are separated, and now the wax pattern is removed, as the model was in the first place. Because of the construction and constituent material of the mould, the wax pattern is removed intact. In the words of the patent, "The flexible rubber material from which the mould is made permits the moulded wax to be withdrawn without injury to undercut surfaces or delicate parts".

From the testimony and the commercial success of the plaintiff's method, I am convinced that the above is a justifiable statement.

The wax pattern is then "invested" in a suitable material for the forming of the secondary casting mould, such as, for instance, plaster of Paris. Obviously the nature of this material is such that it will closely surround the surface of the wax pattern, in such manner that after removal of the latter from the hardened mould by a proper process, the cavity remaining after the removal will again be a practically perfect reproduction of the wax pattern, or, what amounts to the same thing, an adequately close reproduction of the original model. The removal of the wax pattern from the hardened mould is effected by heating. This melts and vaporizes out the wax pattern completely, but does not affect the material of which the secondary mould has been made, or the cavity left by the removal of the wax.

The casting mould is then preferably placed in a centrifugal casting machine, and the molten metal from which the final product is to be made is poured into the mould, and introduced into the cavity, under centrifugal forces created by the rotation of the casting machine. The centrifugal force is used, of course, to insure that the molten metal will completely fill in all the recesses in the cavity. Finally, the mould is separated from the casting.

The defendant, contending for the invalidity of the patent, asserts that casting is old; that casting a pattern in a primary mould is old; that making a plastic or flexible mould is old; that the use of primary and secondary moulds in one process is old; that the lost wax process is old; and that the applied force is old; in a word, that every step in the process is old, and that even if the process be used in a non-analogous art, it is merely a combination of old elements, and therefore not patentable. Moreover, the defendant makes the argument, although he does not press it very strongly, that casting is a generic art by itself whether it be used in sculpture, dentistry or the manufacturing of jewelry; wherefore if the steps are old there cannot be any contention based upon non-analogous arts.

Plaintiff counters with the following contentions:

"The use of an applied force (whether by utilization of centrifugal forces or the pressure of a syringe) to force molten wax into all the crevices of a negative in a mould is new in any art.

"While some of the steps may be old, they have never been combined and used together in the manufacturing of articles of jewelry of highly ornamental or intricate design.

"A combination greatly advancing a non-analogous art is patentable, especially where, as here, one of the steps is new and the method has been attended with great commercial success.

"A presumption of validity derives from the American and British patent grants upon the subject matter—buttressed by a finding that the patent was valid in the United States District Court for the District of Maryland, Jungersen v. Jenkins et al., 30 F.Supp. 615."

It should also be mentioned that the defendant contends that while the utilization of an applied force in connection with the introduction of the molten wax into the primary mould is new per se, nevertheless it is but the substitution of an equivalent, in that Spencer (Patent No. 748996, anno 1904) used gravity to effect his purpose of filling the mould with molten material (since he was dealing with large objects, where the weight of the material used insured its reaching each part of the mould); and since gravity is a force, and since centrifugal force is a force, plaintiff, as said, merely substituted equivalents.

It is quite true that so far as other arts are concerned, many of the steps in the plaintiff's process are not new. Casting, of course, is old. The use of flexible rubber moulds was disclosed in the patent to Taylor, No. 61641, anno 1867, and Spencer's patent, supra; Spencer utilized and Lenz published the lost wax process; Perry (Patent No. 1,121,659, anno 1914) used centrifugal machines for casting metals, as did Linder (Patent No. 1541831; Feemster, Patent No. 108245, anno 1870), and later Taggart used gas and air pressure in casting. The dental profession has been using the lost wax process for years.

None of the above, however, is by any means conclusive. The use of centrifugal or a similar force for the complete and full introduction of the molten wax into the primary mould for pattern-making

is new in any art. It is a vital component part of the plaintiff's process or method, and made possible a distinct step forward in the jewelry art.

As was said by this Circuit in Root Refining Company v. Universal Oil Products Company, 78 F.2d 991, 992: "Validity depends upon whether or not Dubbs and Egloff made any inventive advance in, or contribution to, the art over Trumble. * * *"

■ That Jungersen's process is an advance is unquestioned. The commercial success of the patent is competent evidence thereof, as, parenthetically, is the defendant's use of the process. That the advance is inventive is equally clear to me, because it is new.

■ A combination of partly new and partly old elements is patentable if a new and useful product is thereby obtained: Tumbler et al. v. Baltimore Paint & Color Works, Inc. et al., D.C., 11 F.Supp. 183. As a matter of fact, our Circuit Court has said in Raymond Winship Bristol v. Otis Elevator Co., 52 F.2d 772, 773: "To anticipate a combination, the combination in its entirety must be old." If an alleged invention advances the art substantially and displays real merit, the Court is liberal in its construction of patentability in favor of the inventor: Eibel Process Co. v. Minnesota and Ontario Paper Co., 261 U.S. 45, 63, 43 S.Ct. 322, 67 L.Ed. 523.

Language applicable to the instant dispute was used by the Third Circuit in Julius Levine & Co. v. Automatic Paper Machine Co., Inc., 63 F.2d 547, 549:

"On the question of invalidity because of anticipation, though contested sharply at the trial, the defendants have little to say on appeal. We shall dispose of that issue briefly by holding, with the learned trial master, that the evidence shows beyond question two things: That every element of the box of the patent may be found here and there in the art, but nowhere is there a combination of those elements as the patentee brought them together in structure and function. The facts on which the latter conclusion is based fall within the law of Imhaeuser v. Buerk, 101 U.S. 647, 660, 25 L.Ed. 945; J. L. Owens Co. v. Twin City Separator Co. [8 Cir.], 168 F. 259; Skelly Oil Company v. Universal Oil Products Co. [3 Cir.], 31 F.2d 427, and compel a finding that the claims in suit are not invalid because anticipated. This finding, logically, compels another finding, which is that the combination, whether patentable or not, is new and therefore possesses the first essential of invention.

"The next question is whether the combination is patentably new. The answer to that question depends on whether it involves invention, first, in view of the art and next, whether it is a combination or an aggregation."

■ Since Jungersen's process involves a new step, it cannot be merely an aggregation of old steps; since the step itself is new and has been responsible along with other elements in the combination for a considerable advance in an old art (manufacture of jewelry), and because of its inherent nature it involves invention. Judged, therefore, by the criteria in the case just cited, the patent is valid.

■ The defendant cannot prevail in his position that the utilization of a centrifugal or other applied force in casting the wax pattern into the primary mould is merely a substitution for an equivalent, i. e., for the force of gravity. The position is fundamentally unsound. In my opinion, it is the essence of invention to take advantage of the character of natural forces in hitherto unknown or unaccustomed ways. It is no argument against invention that the force itself is well known, or has been used in other ways in other arts. I need only point out that if defendant were correct in this regard, then only the few great and unique geniuses that grace a decade or a generation would be entitled to the grant of patents. It is only the Newtons, the Einsteins, the Lavoisiers, the Gallileos, and so on, that actually discover and disclose the existence and nature of the great physical and chemical laws and phenomena, that govern at the same time the stars in their courses, the atoms, the protons, and the neutrons in theirs, and the workings of the simplest mechanical appliances, at the same time. But innumerable patents have been and doubtless will be granted to more humble disciples of the physical, chemical and mechanical, and other sciences. He who moulds or controls such forces to produce a new and substantial advance in an art, displays invention.

The Second Circuit said in Dubilier Condenser Corp. v. New York Coil Company, 20 F.2d 723, 724: "In all inventions the safest test is the condition of the art before and after the putative invention appears. At least that is an immeasurably safer test, when available, than any a priori conclusions as to what is or is not an obvious step. To the last we should not resort, except in cases of absolute necessity."

The application of that test in the instant case constitutes a potent argument in favor of the patentability of the plaintiff's process. According to the evidence and the exhibits, the plaintiff's process was almost revolutionary in the manufacture of articles of jewelry of intricate design.

■ Even were there any doubt in my mind concerning novelty or patentability, the attested and conceded commercial success of the process would turn the scales in favor of patentability: Levine v. Automatic, supra; Potts & Co. v. Creager, 155 U.S. 597, 15 S.Ct. 194, 39 L.Ed. 275; Hamilton-Beach Manufacturing Co. v. Geier Co., 7 Cir., 74 F.2d 992.

■ And another factor which should resolve any possible doubt in favor of patentability are the American and British grants of the patent to the plaintiff, as well as the decision of the U. S. District Court of Maryland in this plaintiff's litigation with Jenkins, Jungersen v. Jenkins Jewelry Company et al., D.C., August 3, 1939, 30 F.Supp. 615, which held this very patent was valid. See Standard Brands, Inc. v. National Grain Yeast Corp., 101 F.2d 814, this Circuit, wherein it is stated that prior adjudications, while not binding upon the Court of another district, are entitled to great weight. The grant of the patent by the United States Commissioner of Patents is, of course, also prima facie evidence of patentability: Mumm v. Decker, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983. Most of the patents cited by defendant were before the Patent Examiner.

I, therefore, for the reasons stated, hold that plaintiff's United States Patent No. 2,118,468, issued May 24, 1938, the patent involved in this suit, is valid and infringed. Let requests for findings of fact and conclusions of law be submitted, also an appropriate form of decree, including a provision for reference to a Special Master to find damages and profits prayed for in the complaint.